IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO MEDICAL EMERGENCY GROUP, P.S.C.<br><br>PLAINTIFF<br><br>V.<br><br>IGLESIA EPISCOPAL PUERTORRIQUEŇA, INC; (**THE RICO DEFENDANT**) HOSPITAL EPISCOPAL SAN LUCAS, INC.; SERVICIOS DE SALUD EPISCOPALES, INC; SERVICIOS GENERALES EPISCOPALES, INC.; INSURANCE COMPANY ABC, DEF; ; JOHN DOE , JIM DOE,JANE DOE AND SUE DOE<br><br>DEFENDANTS | CIVIL NO.:<br><br>VIOLATION OF THE RACKEETER INFLUENCED AND CORRUPT ORGANIZATION ACT; BREACH OF CONTRACT; UNJUST ENRICHMENT; FAILURE TO COMPLY WITH IMPLIED COVENANT OF GOOD FAITH, TORTIOUS INTERERENCE; FRAUD; LIBEL AND TORT DAMAGES<br><br>PLAIINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW, the plaintiff, through its undersigned attorneys, and very respectfully states, alleges and prays:

## I.    NATURE OF ACTION

1.1    This is an action for violation of the Racketeer, Influenced and Corrupt Organization Act; for breach of contract, for unjust enrichment, for failure to comply with the implied covenant of good faith, tortious interference; fraud, libel and tort damages.

1.2    The primary cause of action of this case is a long-term criminal enterprise engaged in a pattern of racketeering activity, involving numerous RICO predicate acts during the past seven (7) calendar years.

1.3     The RICO predicates alleged here cluster around mail fraud and wire fraud which in turn are directly related to further criminal conduct punishable as health care fraud; false claims; false statements; false statements in connections with the Social Security Act and theft and/or embezzlement in connection with health care;. See: 18 U.S.C. §§ 287, 669, 1001, 1341, 1343, 1347; and 42 U.S.C. §132Oa-7b(a).

1.4     The Plaintiff requests from this Honorable Court compensation for its economic losses, including but not limited to the loss of billing due to Puerto Rico Medical Emergency Group, P.S.C. ("PRMEG") for its services under the contract with Hospital Episcopal San Lucas ("San Lucas Hospital"), the damages to its good name and reputation in the medical community which it served and the loss of multiple important contractual relationships with physicians who used to provide services to PRMEG.

## II.     VENUE AND JURISDICTION

2.1     Jurisdiction is conferred upon this Court by Title 28 U.S.C.A. § 1331 pursuant to this Honorable Court's federal question jurisdiction, insofar as plaintiff's claims against the RICO defendant arise under the Racketeer Influenced and Corrupt and Organization Act ("R.I.C.O."), particularly 18 U.S.C.A. §1962 (a)-(d), in its civil context pursuant to 18 U.S.C.A. §1964(c).  Supplemental Jurisdiction is also conferred by Title 28 U.S.C.A. §1367, insofar as all Puerto Rico law claims presented herein against the defendants who form part of the corrupt enterprise are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.2     Venue properly lies in this district since the claims and almost all of the operative facts occurred within the Commonwealth of Puerto Rico.

2.3     Pursuant to the Seventh Amendment to the United States Constitution, plaintiffs demand trial by jury as to all counts presented in the instant complaint.

## III.     THE PARTIES

3.1     Plaintiff PRMEG is a professional services corporation registered and authorized to do business in the Commonwealth of Puerto Rico with its main office located in Ponce, Puerto Rico.

3.2     RICO Defendant Iglesia Episcopal Puertorriqueña, Inc. ("Iglesia") is a non-for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Ponce, Puerto Rico.

3.3     RICO Enterprise and supplemental party Defendant, San Lucas Hospital, Inc., is a non-for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Ponce, Puerto Rico.

3.4     RICO Enterprise and supplemental party Defendant, Servicios de Salud Episcopales, Inc., ("Servicios de Salud"), is a non-for-profit corporation created and organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Ponce, Puerto Rico.

3.5     RICO Enterprise and supplemental party Defendant, Servicios Generales Episcopales, Inc., ("Servicios Generales"), is a non-for-profit corporation created and

organized under the laws of the Commonwealth of Puerto Rico with its principal place of business and main offices located in Ponce, Puerto Rico.

3.6    Codefendants John Doe and Jim Doe were at all times and acted in all matters complained hereafter as agents or employees of the corporate defendants and may be liable to plaintiff for their actions. While not defendants in the RICO claim, they are supplemental party defendants as to all other causes of action. All unknown named defendants will be substituted and served process as soon as their names are known.

3.7    Codefendants Jane Doe and Sue Doe are the wife of unknown named codefendants and as such are liable for their actions and/or omissions. The legal partnership constituted by them, are also liable to plaintiff for the actions and omissions of their spouses.  While not defendants in the RICO claim, they are supplemental party defendants as to all other causes of action.  All unknown named defendants will be substituted and served process as soon as their names are known.

3.8    Codefendants Insurance Company ABC and DEF are the insurance company for the corporate defendants and/or the individual defendants, who issued insurance coverage for the actions described in the complaint for which such insurance company is jointly and/or independently liable for the events described in the complaint.

## IV.    GENERAL FACTS

**A.    The Contractual Background.**

4.1    Plaintiff PRMEG is a Puerto Rico corporation created to provide emergency room administration and treatment to patients in various hospitals within the Commonwealth of Puerto Rico.

4.2    Defendant corporations San Lucas Hospital and Servicios de Salud run and own several hospital facilities in the South of Puerto Rico, including but not limited to the San Lucas Hospital emergency room and El Tuque emergency room.

4.3    RICO Defendant Iglesia is by information and belief a non-for-profit religious organization that controls the operation of the RICO enterprise in this case and who grossly profited from the sums generated by the scheme to defraud put in place by the directors of San Lucas Hospital and Servicios de Salud for the benefit of Iglesia.

4.4    As part of its business PRMEG entered into a contract with San Lucas Hospital for the operation of the Emergency Department on September 25, 2007.

4.5    While the contract specified that it should conclude, absent action by San Lucas Hospital, on September 24, 2010, San Lucas continued using the services of PRMEG, pursuant to the contract until it recently notified the cancellation of the contract, effective on May 2, 2014.  Accordingly, PRMEG kept a contractual relationship with San Lucas Hospital from September 24, 2007 up to and including May 2, 2014.

4.6    Pursuant to the contract between PRMEG and San Lucas Hospital, PRMEG would manage and provide medical coverage for the San Lucas Hospital Emergency Room at its own cost and risk.  In compensation for this service, San Lucas Hospital agreed to pay PRMEG pursuant to the terms included in the 23rd clause of the contract.

4.7    PRMEG never consented or agreed to any change or amendment to the contractual agreement and no contract amendment was ever signed by PRMEG.

4.8    At all times PRMEG fully complied with all the services required by the contract.   However, as will be explained PRMEG was never fully compensated as agreed in the contract.

4.9    On the contrary, since early in the contractual relationship San Lucas Hospital deviated from the agreed terms of the agreement and contrary to its contractual obligations and the implied covenant of good faith, commenced a series of actions, in conjunction with Servicios de Salud, directed at depriving PRMEG of full extent of the agreed contractual compensation.

4.10    Unbeknown to PRMEG, at that time, Hospital and Servicios de Salud implemented a series of actions solely directed at enriching the RICO defendant at the expense of PRMEG.   At the same time they implemented a series of breaches of contract directed at pressuring PRMEG to amend or cancel its contract with San Lucas Hospital in order to create the appearance that the events that are described hereafter were consented and/or agreed to by PRMEG.

4.11    Pursuant to the clear terms of the agreement and in consideration for the services provided by PRMEG, San Lucas Hospital agreed to pay PRMEG during the first three months of the contract the monthly sum of $155,000.00 and thereafter $133,000.00. In addition to the monthly payment, PRMEG had the right to directly bill insurance companies the professional service component of all services PRMEG provided to any and all patients who visited the San Lucas Hospital Emergency Room. To do this PRMEG had obtained from each of its contracted physicians a written consent known by CMS and Medicare as the "reassignment of benefit" that enable

PRMEG to bill for the services provided by each of its contracted physicians who provided services in the San Lucas Hospital Emergency Room.

4.12   On the contrary, San Lucas Hospital never obtained any reassignment of benefit consent or any other valid type of consent from PRMEG to bill MCS authorized Medicare insurance carriers for PRMEG's services.

4.13   Trusting the contractual representations made by San Lucas Hospital in the contract,  PRMEG dedicated its full resources and experience to developing the administrative infrastructure necessary to provide the most qualified services to San Lucas Hospital and at the same time bill for these services to different insurance companies.  At all times, PRMEG trusted San Lucas Hospital and Servicios de Salud representations without any limitation.

4.14   Pursuant to the contractual agreement, San Lucas Hospital had the contractual requirement to notify each of the insurance carriers that did business with the Hospital of the fact that PRMEG had retained the right to bill the professional component of the services it rendered at the hospital and to notify PRMEG of any ongoing or upcoming negotiations with any insurance company to allow PRMEG to participate in such negotiations to expedite and facilitate the billing of PRMEG services to each such insurer.

4.15   The contract stated in the pertinent portion: "HESL agree that at the expiration of its agreements with each Medical Insurance Companies, HESL will include the Corporation (PRMEG) in any and all renewal negotiations with the Medical Insurance Companies, HESL consents and will specifically allow the Corporation to negotiate terms that will terminate the current per diem or all inclusive arrangements

and will enable the Corporation to thereafter directly bill the Medical Insurance Companies for all professional services provided to HESL's patients who receive medical treatment at the Emergency Department."

4.16   Notwithstanding the above, San Lucas Hospital never complied with the agreements in the contract and never invited nor allowed PRMEG to participate in any of the meetings with the insurance companies.

4.17   In fact, by information and belief PRMEG has learned that the aforementioned negotiations and meetings with different insurance companies were carried out by Servicio de Salud and not San Lucas Hospital.

4.18   By information and belief it is alleged that after San Lucas Hospital entered into the professional service contract with PRMEG, Servicios de Salud negotiated and signed multiple new agreements or amended agreements with insurance carriers including a *per diem* and/or *all inclusive* arrangement by way of false and fraudulent misrepresentations to the insurance carriers that San Lucas Hospital and Servicios de Salud could in fact bill the insurance companies for the professional services rendered by PRMEG in the emergency rooms property of the defendants.

4.19   By creating a complex scheme of various corporations the defendants were able to hide from PRMEG the fact that San Lucas had transferred all billing responsibilities under the contracts for services in the hospital to Servicios de Salud and that, contrary to the contractual agreement, Servicios de Salud was billing the insurance companies, through another corporation, Servicios Generales Episcolaes, Inc., for the same services that PRMEG was entitled to bill under both the contract, as well as Medicare law and CMS regulations.

4.20    Taking advantage of the fact that the original term of the contract between San Lucas and PRMEG had elapsed and that it was continuing month by month, the corporate defendants commenced a series of actions directed at obtaining essential business information from PRMEG under the veil of "negotiating" a new contract.

4.21    Pursuant to this, Messrs. Pedro F. Barez Clavel and Julio Colón Ruiz, acting as officers of Hospital San Lucas and Servicios de Salud, required from PRMEG detailed business and financial information concerning the physicians that were contracted by PRMEG, how much they were paid, administrative costs related to PRMEG management of the emergency room and PRMEG's cost structure.

4.22    In addition to the above, under the guise that they were considering a new contract for PRMEG, the defendants continued to delay the notification to the insurance companies that San Lucas Hospital had agreed with PRMEG for the latter to directly bill their professional services to the individual insurance companies that provide coverage for the patients of the San Lucas Emergency Room.

4.23    To the surprise of PRMEG, as of January 2014, after more than 7 years of uninterrupted contracted services with San Lucas Hospital, PRMEG learned that, San Lucas Hospital and Servicios de Salud had not even begun to initiate conversations to terminate their old *per diem* and *all inclusive* arrangements with most of the insurance providers in Puerto Rico.

4.24    PRMEG discovered this fact when, upon many requests from PRMEG, Barez finally provided, on January 14, 2014, a list of the contract status between San Lucas Hospital and the insurance companies.

4.25   Upon receipt of the January letter, the directors of PRMEG confronted Mr. Barez regarding the surprising number of *per diem* and *all inclusive* arrangements in violation of the contract. To their surprise and appall, Barez responded that it was with the moneys obtained through these agreements that the hospital was paying PRMEG for its services.

4.26   A series of meetings and letters ensued, where the hospital, for the first time, insisted that PRMEG had to cease the billing to the various insurance companies for its services as agreed in the contract.  When PRMEG refused to do so and when PRMEG informed the defendants that it understood that San Lucas Hospital was not only breaching its contract with PRMEG, but also violating federal law and applicable regulation, Barez and San Lucas Hospital countered cancelling the contract effective May 2, 2014.

**B.**   **MCS Claims.**

4.27   At the same time PRMEG was negotiating the renewal of its contract with San Lucas Hospital, an insurance carrier and Medicare administrator, Medical Card System Corp., had commenced a formal requirement for repayment of amounts of money allegedly overcharged by PRMEG.

4.28   MCS had previously required repayment from PRMEG for payments made on account of Medicare covered benefits that MCS claimed it has paid to Hospital San Lucas.  However, on those prior occasions and in good faith, once PRMEG established that it was contractually authorize to bill for its services to MCS covered patients in San Lucas Hospital emergency room, MCS had agreed not to continue the process of recovery.

4.29   That changed late in the year 2013 when in the midst of the negotiations with PRMEG and San Lucas Hospital it issued a claim letter against PRMEG purportedly invalidating the prior agreements and claiming from PRMEG over $600,000.00. in prior payments made on account of services rendered to MCS covered patients.

4.30   MCS claims against PRMEG was exclusively focused on the allegation that MCS had an ongoing *per diem* and/or all inclusive agreement with Hospital San Lucas and that pursuant to such agreement it had paid the services provided by PRMEG to Hospital San Lucas for which PRMEG had to reimburse or return the payments made to it.

4.31   Several meetings ensued with MCS, Hospital San Lucas, Servicios de Salud and PRMEG officials. During the last meeting it became obvious, that the named defendants had continued to maintain, in clear disregard with the contractual obligations with PRMEG, the *per diem* and/or all inclusive agreements with MCS and that such agreements covered PRMEG services in the emergency room.

4.32   During the last meeting, Mr. Barez in fact admitted to all present that he had recently concluded the negotiations for excluding the *per diem* and/or all inclusive as to MCS commercial type medical insurance but that all MCS medicare covered insured continued to operate under the same *per diem* and/or all inclusive agreement that existed in 2007 and that was amended several time thereafter.

4.33   At the meeting PRMEG countered that it also has a valid provider agreement with MCS, that it provided all services that were billed and that it has never authorize San Lucas Hospital to bill for its services nor has executed a reassignment of

benefit in favor of San Lucas Hospital and that all of its physicians had reassign their right to Medicare fees to PRMEG for which all of PRMEG was correct as a matter of law and any overpayment was the responsibility of San Lucas Hospital.

4.34   At present MCS continues to claim to PRMEG the payment of over $600,000.00 of properly billed the fees for professional component services provided to Medicare covered MCS insured patients as a sole result of defendant's actions and omissions in breach of contract in this case.

### C.   San Lucas Reduces PRMEG's Compensation

4.35   Not satisfied with the fact that San Lucas Hospital was billing insurance companies for services that belonged to PRMEG, Messrs. Barez and Colón agreed to further breach San Lucas Hospital's contract with PRMEG by unilaterally reducing the agreed monthly payment to PRMEG.

4.36   The first such reduction occurred without PRMEG consent when in October 2011 the agreed monthly compensation was reduced to $120,000.00.

4.37   No reason or valid motive was advanced by San Lucas Hospital prior to enforcing the reduction.   No amendment agreement was ever signed containing PRMEG's consent to this reduction that caused PRMEG hundred of thousand of dollars in losses and damages.

4.38   Again, not satisfied with breaching the agreement as to the billing portions of the contract and with reducing the monthly compensation, San Lucas Hospital again notified a further unilateral reduction without the consent of PRMEG on November 2012. This second reduction reduced PRMEG's monthly compensation to $105,000.00.

4.39    At the same time San Lucas Hospital was reducing PRMEG compensation for the operations of its Emergency Room, the defendants notified PRMEG that it was unilaterally reducing another of PRMEG's contracts, this one for the operation of the emergency room in the El Tuque treatment facility operated by San Lucas Hospital. While PRMEG contract with San Lucas Hospital regarding the operation of El Tuque Emergency Room called for the hospital to pay PRMEG a monthly fee of $52,000.00, the defendants unilaterally determined to reduce the compensation to $48,000.00 in November of 2010.

4.40    The multiple unilateral reductions in the agreed payments to PRMEG seriously reduced the monthly compensation that PRMEG had agreed to receive in exchange for its services. The loss of a significant portion of the agreed monthly payment caused significant damages and losses to PRMEG.

**D.    San Lucas Hospital Forces PRMEG to Increase Medical Coverage, but Fails to Compensate PREMG for those Additional Services.**

4.41    At the same time that the defendants were reducing the monthly payments to PRMEG and interfering with PRMEG contractual and legal right to bill for its services, Messrs. Barez and Colón unilaterally agreed to order PRMEG to increase the number of shifts covered by board certified emergency room physicians.  Up until the time of the change, PRMEG was contractually bound to provide a certain number of shifts to be covered by general physicians and other shifts covered by emergency room physicians. Defendants unilaterally increased PRMEG services without providing any compensation.

4.42    With the forced change to the terms of service, PRMEG was forced to retain additional emergency room physicians to cover such shifts but was never

compensated accordingly.  This change was never included in any contract amendment nor agreed to by PRMEG. The defendants refused at all time to properly compensate PRMEG for these additional services not included in the original contract with San Lucas Hospital causing serious economic harm to PRMEG.

4.43   Further to this pattern of unilateral changes and breaches of its contract with PRMEG, defendants later notified PRMEG of its determination to create an "overlapping" shift that in essence created an additional shift that PRMEG was required to cover. Again, this change was not agreed to or consented by PRMEG nor any amended contract was signed. San Lucas Hospital refused at all time to properly compensate PRMEG for this additional services not included in the original contract with San Lucas Hospital causing serious economic harm to PRMEG.

**E.    Defendants interfere with PRMEG's relationship with its contracted physicians providing false information to PRMEG contracted physicians.**

4.44   Defendants used the confidential business information provided in good faith by PRMEG for the so called "negotiations" to take over, copy and use for the sole benefit of the defendants, PRMEG's business model and to be able to promptly and effectively interfere with the contracts that PRMEG had with its services providers who for many years had provided contractual services to PRMEG.

4.45   With the information provided by PRMEG, Defendant's employees and officers including but not limited to Pedro Barez, Colón and other San Lucas Hospital employees contacted PRMEG's contracted physicians first to offer false, misleading and libelous information concerning PRMEG finances and its ability to continue using their services and second to offer a very similar compensation arrangement of the kind that PRMEG had provided to each such physicians.

4.46    Defendants' employees contacted and pressured PRMEG's contractors in violating their existing contracts with PRMEG and directed them to refuse any work offer made by PRMEG.

4.47    In so acting the defendants, were effective in interfering with the contracts of most of the physicians who used to provide services to plaintiff in the San Lucas Hospital's facilities.

4.48    The defendants obtained the necessary information concerning the economic value of the services contracts between PRMEG and its physicians by pressuring PRMEG to divulge this privileged and confidential information arguing that it was necessary to evaluate the renewal of the contract when the corporate defendants knew that PRMEG would not continue to offer services to San Lucas Hospital.

4.49    As a result of the tortious and bad faith conduct described above, PRMEG has lost access to an important group of physicians that it had carefully assembled to provide emergency room services, notwithstanding the fact that PRMEG has other medical facilities available where this carefully chosen and trained physicians could had continued providing services to PRMEG.  The loss of this talent list by PRMEG certainly creates significant losses and damages to PRMEG due to the limited access to comparably trained and educated physicians in the Puerto Rico market.

## V.  OVERVIEW OF DEFENDANT IGLESIA PATTERN OF FRAUDULENT CONDUCT AND RACKETERRING ACTIVITY

## A.    Introduction.

5.1    Plaintiff brings this action under the Racketeering Influence and Corrupt Organization Act and other law against the named defendants. The basis of this action revolves around a scheme of fraudulent conduct that the conspiring defendants

engaged in through various enterprises as a result of their acts taken in furtherance of the fraudulent scheme.

5.2    As a consequence of their enterprise and conspiratorial actions, as will be detailed, the RICO Defendant violated the RICO Act, both directly and through the corrupt enterprise violating numerous federal laws and regulations by falsely represented to insurance companies that the enterprise defendants were legally entitled to bill for the services provided by PRMEG well knowing that such representation were false, thus, fraudulently obtaining millions of dollars in payments from insurance companies for services rendered by PRMEG when such moneys properly belonged to PRMEG. Furthermore, the RICO Defendant  fraudulently conspired to deprive PRMEG of its ability to directly bill for all its services as per the contract signed by asking insurance companies to include the professional component of PRMEG services to patients within a *per diem* and/or *all inclusive*  agreement with insurance companies well knowing and in particular with regards to Medicare covered services that PRMEG had never agreed to reassign such professional component rendered by plaIntiff to the defendants for the billing of such services by the defendants.

5.3    By defrauding and overbilling the insurance companies for the professional service component of the services provided by PRMEG, either directly or through a *per diem* and/or *all inclusive* arrangements the corrupt enterprise defendants, San Lucas Hospital and Servicios de Salud Episcopal were unjustly enriched, which in turn caused severe and on-going economic damages to plaintiff's business operations and financial infrastructure; and severely tarnished plaintiff's business reputation.  The

scheme to defraud also caused millions of dollars of losses to insurance companies in Puerto Rico, some of which are related to Medicare or Medicaid covered services.

5.4     By information and belief it is alleged that at some point in time corporate directors for the corporate defendants and officials for Iglesia met to discuss how they could channel corporate funds to the Iglesia's bank accounts.

5.5     During those meetings it was agreed that moneys possessed by San Lucas Hospital and/or Servicios de Salud in excess of 50 Million Dollars were to be diverted to Iglesia to use such funds for the benefit of Iglesia and its projects.

5.6     It was furthered agreed that the corporate defendants would create a kind of monthly contribution to Iglesia in order for the corporate defendants not to have, as before, significant cash deposited on their names and to further enrich Iglesia.  This monthly payment was coordinated through Iglesia's officers and Servicio de Salud's officers and was implemented every months without taking into consideration the financial operation of San Lucas Hospital.

5.7     The purpose of channeling funds from the corporate defendants to the RICO defendant was to also provide direct moneys to Iglesia's then directors to cover their living expenses and to purchase property and assets for their individual benefit.

5.8     By information and belief it is alleged that in few years Iglesia spent the significant amount of moneys transferred from the corporate defendants to Iglesia and continued to require increasingly larger monthly sums to cover Iglesia's expenses, particularly for the living arrangements of Iglesia's directors.

5.9     San Lucas Hospital, however, had increased operational costs associated with the difficult financial situation in Puerto Rico for which the individual defendants, on

behalf of Iglesia, needed to corrupt San Lucas Hospital and Servicios de Salud to improperly bill millions of dollars to insurance companies for services rendered by PRMEG when they well knew such services belonged to PRMEG and could not properly be billed by the corrupted enterprises.

5.10   In so doing, the corrupted enterprises was able to maintain the necessary cash flow to provide Iglesia with the required monthly payments while at the same time covering Hospital San Lucas operational expenses.

**B.   The Scheme.**

5.11   Prior to the signing of the contract with PRMEG San Lucas Hospital used a "flat fee" arrangement with prior emergency room service providers.  Under the "flat fee" arrangement the corporation that managed the emergency room did not bill any of its services, thus assigning such right to the hospital.

5.12   Under the new arrangement signed with PRMEG the hospital did not receive any assignment of benefits from PRMEG in exchange for paying a substantially reduced monthly rate to PRMEG.  PRMEG in turn, retained its legal right to bill for the professional component of its services to insurance companies.   Thus, PRMEG assumed the risk of payment for the professional component of its services and the Hospital limited its monthly expenditure for the administration and management of the emergency room.

5.13   Having determined that allowing PRMEG to bill for the professional component of the services would impact San Lucas Hospital's and Servicios de Salud's finances, in turn affecting their capacity to fulfill the monetary demands of the RICO defendant, the corrupted enterprises, decided to embark in a course of deception,

deceit, bad faith false representations and fraud to keep both the lower monthly compensation agreed with PRMEG, as well as the higher income produced by billing to insurance companies the professional component to which PRMEG was entitled to.

5.14    To further the racketeering and fraudulent intent it is alleged that by information and belief Iglesia, used a series of corporations in order to promote and advance the fraudulent objectives of billing for the services that were provided by PRMEG, well knowing that it was not legally entitled to bill such services.

5.15    Thus, Iglesia used the corporate defendants to represent to the different insurance providers, including various delegated Medicare and Medicaid recipients that San Lucas Hospital had engaged the services of Servicios de Salud Episcopal to manage its operations.   In turn Servicio de Salud Episcopales represented to the insurance companies that all services provided by Hospital San Lucas, a non-for profit, would be billed by Servicios Generales, another corporation controlled by Iglesia.   As such the providers numbers fraudulently used to improperly bill and ultimately enrich Iglesia belonged to San Lucas Hospital, but were managed by Servicios de Salud Episcopal and used to bill through Servicios Generales.

5.16    As the scheme to defraud goes, the Rico Defendant used San Lucas Hospital to retain PRMEG to provide services to its patients in the Emergency Room and later in El Tuque Emergency Room, to falsely represent to PRMEG that it would renounce all *per diem* and/or *all inclusive* arrangements with the insurance companies and Medicare and Medicaid recipients when in truth it had no intention of doing so.   The RICO enterprise then continued to falsely represent to PRMEG that there was no issue that prevented PRMEG from directly billing the professional component of its services

when it wholly knew that it was continuing to bill such component to the same insurance companies.

5.17   At the same this occurred San Lucas Hospital delegated the negotiations of its contracts with insurer providers to another part of the RICO enterprise, Servicios de Salud and assigned to it a substantial part of its income.  The RICO enterprise then fraudulently conveyed to the insurance companies, through the use of the mails and wires, that San Lucas Hospital was legally able to provide a *per diem* and/or *all inclusive* arrangement to the insurance company as it had done before, but failed to inform in bad faith and with gross disregard to the truth that it had retained PRMEG to manage its emergency room and El Tuque emergency room allowing PRMEG to directly bill for the professional component of its services.

5.18   To further the fraud and conceal the products of the scheme, the RICO Defendant created a new corporation named Servicios Generales Episcopales, Inc., whose main objective was to bill the services provided by San Lucas Hospital, including the professional component of the services provided by PRMEG.   To be able to consummate this scheme to defraud, to bill services not actually provided by San Lucas Hospital, but by PRMEG, from 2007 and through 2014 the RICO enterprise used the mail and wires to electronically invoice the insurance companies, on at least a monthly basis, for monies to which the enterprise was not entitled because they belonged to PRMEG and in exchange received numerous payments either through wire or through the use of the United States Mail.

5.19    It draws from the above that the Iglesia used and corrupted for its illegal purposes San Lucas Hospital, Servicios de Salud and Servicios Generales , as the enterprise used to effect the fraudulent scheme describe above.

5.20    Most if not all insurance providers received Federal Funds covered by Medicare and Medicaid funds for which the scheme to defraud affected interstate commerce as described above.

## VI.  FIRST CAUSE OF ACTION
## (RICO ACT SECTIONS 1962(B)-(C) SOLELY AGAINST THE RICO DEFENDANT)

6.1    The allegations contained in all preceding paragraphs are realleged as if fully alleged herein.

6.2    Plaintiff is a person within the meaning of 18 U.S.C. §1961(3).

6.3    Iglesia, the RICO Defendant is also a person within the meaning of 18 U.S.C. §1961(3).

## A.    The RICO Enterprise

6.4    The RICO Defendant is a Puerto Rico Corporation who corrupted a group of Puerto Rico corporations it controls for the common purpose of carrying out an ongoing criminal enterprise, as described in the Complaint.

6.5    Hospital San Lucas, Servicios Episcopales and Servicios Generales are the enterprise, as that term is defined in 18 U.S.C. §1961(4) for the purpose defrauding multiple insurance companies and thus causing damages to plaintiff as part of the racketeering scheme.   These corporations form an enterprise which engages in and whose activities affect, interstate commerce.

## B.    Pattern of Racketeering Activity:  Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341 and 1343

6.6     As described above, the RICO defendant engaged in a scheme to defraud plaintiff and victim insurance companies in Puerto Rico and elsewhere.  The ultimate objective of the RICO defendant's scheme was to maintain and/or grow the amount of money available for Iglesia to withdraw from the corrupted enterprise corporations by way of the criminal activity described herein.

6.7     In furtherance of this scheme, the RICO defendant, through the corrupt enterprise, transmitted or caused to be transmitted, by means of wire communication in interstate commerce, writings, moneys, signs, signals, pictures or sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including but not limited to, the following:

- False and misleading information to the plaintiff and the insurance companies by falsely representing that it could bill for the services provided by PRMEG;

- Fraudulent invoices to insurance companies by billing a *per diem* and/or *all inclusive* fee that included the professional component of the services provided by PRMEG when it had contractually agreed that PRMEG was the entity entitled to bill, as it did, such services to the insurance company thus defrauding plaintiff and the insurance companies and unjustly enriching with the proceeds of the wrongly billed amounts;

- Emails incorporating the aforementioned false and misleading statements between the RICO corrupted enterprise and the insurance companies victims of the scheme to defraud;

- Mailings or wirings with the fraudulently acquired moneys from the insurance companies to the RICO Enterprise corporations; and

- Writings and/or mailings or emails between the RICO defendant and the corrupted RICO enterprise regarding the transmittal of moneys from the corrupted enterprise defendants to the RICO defendant.

6.8     Pursuant to and in furtherance of the fraudulent scheme, Iglesia, through the use of the corrupt enterprise, committed multiple acts of conduct intent on defrauding plaintiff and insurance companies, affecting interstate commerce, through, without limitation:

- Various interstate communications via email, wire and/or phone: supplying to the insurance companies multiple communications of their alleged false entitlement to bill for the professional component of PRMEG services notwithstanding what was agreed in the contract;

- Various interstate communications via email, wire and/or phone: fraudulently concealing to the insurance companies the contractual relationship between PRMEG and San Lucas Hospital;

- Various interstate communications via email, wire and/or phone with PRMEG directors to further the concealment portion of the conspiracy to defraud by providing false, incomplete and inaccurate information to PRMEG directed at false representing that San Lucas Hospital was complying with its contractual obligations and attempting to clarify with each insurance company that PREMG was the contractual entity with a right to bill the professional

component of the services rendered by PREMG when the contrary was happening:

• Various interstate communications via email, wire and/or phone: supplying to the insurance companies with fraudulent invoices and/or bills for services not rendered by Hospital San Lucas, but by PRMEG;

• Various interstate communications via email, wire and/or phone: supplying to the insurance companies with false and/or fraudulent information to convince the insurance companies to renew contractual agreements through which the defendants could continue and enlarge their scheme to defraud and collect moneys to which they were not entitled to.

6.9    These numerous acts that took place continuously from the year 2007 up to and including the year 2014 constitute a clear pattern of racketeering activity pursuant to U.S.C.A. §1961(5).

6.10   The RICO defendant participated in the scheme knowingly, willfully, and with the specific intent to deceive and defraud the Plaintiff, as well as the insurance companies.

6.11   Iglesia has directly or indirectly conducted and participated in the conduct of the enterprise affairs through a pattern of racketeering activity as described above in violation of 18 U.S.C. §1962(c).

6.12   The RICO Defendant is engaged and controls an enterprise whose activities affect interstate commerce, in violation of 18 U.S.C.A. §1962(b).  The RICO defendant has directly or indirectly acquired and maintained interest in and control of

the RICO enterprise through the pattern of racketeering activity described above, again in violation of 18 U.S.C.A. §1962(b).

6.13    Specifically the RICO enterprise corporations were corrupted by the RICO defendant with the goal of facilitating access to millions of dollars in fraudulent billings to insurance plans, including a significant amount to be derived from the fraudulent and racketeering conduct.

6.14    The RICO enterprise;s false and misleading statements have been relied on by Plaintiffs and insurance companies.    Further these false and misleading statements, as well as the actions undertaken by the RICO defendant have caused plaintiff considerable damage.   These damages are estimated in an amount not less than $6,000,000.00. However, pursuant to 18 U.S.C. §1964 threefold the damages against the RICO Defendant are requested.

## VII. SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT AGAINST THE CORPORATE DEFENDANTS)

7.1    The allegations contained in all preceding paragraphs are realleged as if fully alleged herein.

7.2    Notwithstanding the clear terms of the contract, San Lucas Hospital and Servicios de Salud agreed to a course of conduct by way of deceiving the insurance companies into believing that PRMEG had assigned to San Lucas Hospital and Servicios de Salud its right to recover for the professional component of its services to patients at the Emergency Rooms owned by San Lucas Hospital and Servicios de Salud knowing well that such conduct constituted a clear breach of the contract with PRMEG.

7.3     At the same time and to further and maintain the fraud on the insurance companies these defendants failed to provide any notice or invitation to PRMEG to participate in the negotiations with the insurance companies to thereafter eliminate the *per diem* and/or *all inclusive* agreements also in breach of the contract.

7.4     Further to the above, San Lucas Hospital arbitrarily and without the consent of PRMEG reduced the monthly compensation paid by San Lucas Hospital to PRMEG both for the services provided to San Lucas Hospital at its emergency room, as well as in the emergency room of the El Tuque Emergency Room.  This reduction in the monthly payments to PRMEG, which was never consented to or approved by PRMEG caused economic losses to PRMEG in an amount not less than $843,000.00.

7.5     The reduction in the agreed payments to PRMEG for its services constitute a late payment for which legal interest should be imposed on all due amounts from the moment such amounts were due and payable to PRMEG.  PRMEG estimates the amount prejudgment interest owed to PRMEG on account of the reduced payments to be not less than $100,000.00.

7.6     San Lucas Hospital also breached its contractual obligations with PRMEG by arbitrarily and without the consent of PRMEG required the latter to provide without any compensation further services.  San Lucas Hospital required PRMEG to provide additional board certified emergency room physicians which substantially increased the costs of operating the emergency room by PRMEG.  Further, San Lucas required PRMEG to create an overlapping shift with additional physicians also increasing the costs of operating the emergency room without any compensation. The estimated costs

of the additional services provided by PRMEG that were never compensated by San Lucas Hospital is conservatively estimated in an amount not less than $1,200,000.00.

7.7     In addition to the above, as a result of the defendants' scheme to defraud the insurance companies, in breach of the contract with PRMEG, PREMG was prevented from fully billing and recovering its services as permitted by the Contract with San Lucas Hospital.

7.8     Particularly several insurance companies never were willing to allow PRMEG to bill and recover for the services it provided to patients at San Lucas Hospital. San Lucas Hospital and Servicios de Salud, however, were able to bill and recover such services, which were never paid to PRMEG.   Codefendant Servicios Generales also benefited from this breach and fraudulent scheme by receiving a percentage of the overbilling made to insurance companies.

7.9     PRMEG has a legal right to recover theses services illegally billed by San Lucas Hospital and Servicios de Salud and Servicios Generales, as damages for the breach of contract described herein.   PRMEG estimate that the amount of money that PREMG was not able to bill and recover due to San Lucas Servicios de Salud and Servicios Generales, breach of contract actions and omissions are estimated in an amount not less than 6,000,000.00.

## VIII.   THIRD CAUSE OF ACTION
## (BREACH OF IMPLIED COVENANT OF GOOD FAITH)

8.1.     Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

8.2.    Pursuant to the executed contract between San Lucas Hospital and PRMEG, the Puerto Rico Civil Code and the Doctrine of the Implied Covenant of Good Faith, San Lucas Hospital and Servicios de Salud had both a contractual and legal obligation to conduct themselves with good faith in all actions related to the execution of San Lucas Hospital contractual agreement with PRMEG.

8.3.    Given the above, San Lucas Hospital, Servicios de Salud and Servicios Generales, not only had to comply with the contractual requirement that they allow PRMEG to participate in the negotiations with the insurance companies for the conclusion of all *per diem* and/or *all inclusive* that affected PRMEG's right to directly bill and recover for the professional component of its services, but also had the good faith obligation to promptly inform PRMEG any situation that affected this contractual obligation.

8.4.    By materially breaching the contract with PRMEG and by deceiving both PRMEG and the insurance companies with the material misrepresentations described heretofore San Lucas Hospital, Servicios de Salud and and Servicios Generales, acted with clear disregard and in violation of the implied covenant of good faith that exist in all contractual relationships in Puerto Rico.

8.5.    For such actions, San Lucas Hospital, Servicios de Salud and Servicios Generales, are both jointly liable to PRMEG for all damages caused as a result of their violation of the implied covenant of good faith, including but not limited to the amounts that PRMEG was prevented from billing and recovering from multiple insurance companies.  These damages are estimated in an amount not less than 6,000,000.00.

**IX. FOURTH CAUSE OF ACTION**
**(CONTRACTUAL FRAUD – "DOLO")**

9.1    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

9.2    For the aforementioned facts the conduct exhibited by San Lucas Hospital, Servicios de Salud and Servicios Generales, constitute contractual fraud ("dolo") in the performance of the contract with PRMEG.

9.3    Given the above, both San Lucas Hospital, Servicios de Salud and Servicios Generales, are jointly responsible for the totality of all damages caused to PRMEG as a result of their actions, irrespective if such damages were foreseeable or not. Such damages are estimated in not less than 6,000.000.00.

## X. FIFTH CAUSE OF ACTION
## (UNJUST ENRICHMENT)

10.1    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

10.2    As a direct result of their acts and omissions as previously described, San Lucas Hospital, Servicios de Salud and Servicios Generales, were able to bill millions of dollars for services San Lucas Hospital did not provide or was not contractually authorized to bill and which payments belonged to PRMEG.  Equally, by unilaterally reducing the monthly compensation due to PRMEG and by increasing the services required from PRMEG without compensation, San Lucas Servicios de Salud and Servicios Generales, wrongfully and unjustly enriched themselves while impoverishing PRMEG.

10.3    The only reason why San Lucas Hospital, Servicios de Salud and Servicios Generales, did not properly and promptly act with regards to their contractual obligations with PRMEG was because they wanted to receive the economic benefits

derived from the fraudulent billing of the services that contractually and legally belonged to PRMEG.

10.4    Pursuant to the unjust enrichment doctrine, PRMEG has the right, in the alternative a contractual claim does not proceed, to be compensated for all the billing and moneys received illegally and unjustly by San Lucas Hospital, Servicios de Salud and Servicios Generales,   that legally and contractually belonged to PRMEG.   This claim is valued in an amount not less than 6,000,000.   Equally, PRMEG is entitle to recover under this same doctrine for all the value of the reduced payments and increased services that were never compensated and through which San Lucas Hospital, Servicios de Salud and Servicios Generales, enriched themselves while impoverishing PRMEG. This claim is valued in an amount not less than 2,000,000.

## XI. SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

11.1    Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

11.2    At present PRMEG has a pending claim for recovery of moneys claimed by MCS for services rendered by PRMEG that MCS understands were paid to San Lucas Hospital, and/or Servicios de Salud pursuant to a negotiated *per diem* and/or all inclusive agreement for emergency room services.

11.3    Such agreement was negotiated and renovated without the consent or even prior notification to PRMEG who had the contractual and legal right to bill insurance companies for its services to covered patients treated by its physicians in the San Lucas Hospital and El Tuque emergency room.

11.4   Other insurance companies have presented in the past and may present in the future similar claims that if effective will allow the insurance companies to deduct or recover the claimed amounts from future invoices sent by PRMEG for services rendered in other emergency rooms where it provides services.

11.5   Accordingly, it is respectfully requested that this Honorable Court issues declaratory judgment against the corporate defendants in this case to jointly respond and indemnify with payment to the insurance companies of any claims for overpayment resulting from the insurance company claiming that it overpaid PRMEG as a result of paying for the same services to any of the corporate defendants in this case.

11.6   Declaratory Judgment is also requested holding that both the applicable law, as well as the contract in this case barred the corporate defendants from billing for PRMEG's services to covered patients treated by its physicians in the San Lucas Hospital and El Tuque emergency room to all insurance companies and that the right to bill for such services was exclusive to PRMEG.

11.7   Declaratory Judgment is also requested holding that any billing by any of the corporate defendants for PRMEG's services to covered patients treated by its physicians in the San Lucas Hospital and El Tuque emergency room can not be deemed to be equal as payment to PRMEG for which  the corporate defendants must be ordered to satisfy and pay the insurance companies and/or fully indemnify PRMEG from any obligation to pay any such sums to any insurance company for past, present or future claim arising out of the improper billing by the corporate defendants of PRMEG services to covered patients treated by its physicians in the San Lucas Hospital and El Tuque emergency room.

## XII.  SEVENTH CAUSE OF ACTION
## (TORTIOUS INTERFERENCE, BAD FAITH USE OF CONFIDENTIAL INFORMATION)

12.1   Plaintiff realleges as if fully set forth herein the allegations contained in all preceding paragraphs.

12.2   Barez, Colón on behalf of the corporate defendants including San Lucas Hospital used the confidential business information provided in good faith by PRMEG during the so called "negotiations" to take over, copy and use for the sole benefit of the defendants, PRMEG's business model and to be able to promptly and effectively interfere with the contracts that PRMEG had with its services providers who for many years had provided contractual services to PRMEG.

12.3   Barez, Colón and other San Lucas Hospital's employees contacted and pressured PRMEG's contractors in violating their existing contracts with PRMEG and directed them to refuse any work offer made by PRMEG.  In so acting, Barez, Colón on behalf of the corporate defendants, were interfering with the contracts of most of the physicians who used to provide services to plaintiff in the San Lucas Hospital's facilities.

12.4   As a result of the tortious and bad faith conduct described above, PRMEG has lost access to an important group of physicians that it had carefully assembled to provide emergency room services.

12.5   The Corporate Defendants benefited from the conduct of its employees and agents as described above for which they are jointly liable for the damages caused for these action to PRMEG.

12.6   The corporate defendants, through its agents and employees, acting with gross disregard to the truth and with the obvious intent to cause damages to PRMEG, provided false and defamatory information to PRMEG's contracted employees by

informing and/or implying to the them that the termination of San Lucas Hospital with PRMEG will cause the financial ruin of the latter and that PRMEG will not be able to comply with its contractual obligations with these physicians.

12.7   Furthermore, the corporate defendants, through its agents and employees, defamed the good corporate name of PRMEG by claiming that certain delays in payment to PRMEG contracted employees were caused by PRMEG's management problems when such individual defendants as well as the corporate defendants, well knew that the delay in payment and any related issue was solely caused by San Lucas Hospital habit of paying late the invoices sent for payment by PRMEG.

12.8   The corporate defendants are jointly liable to PRMEG for the damages caused to PREMG good name and good will in an amount not less than $500,000.00.

12.9   Furthermore, the corporate defendants are jointly liable to PRMEG for the damages caused to PREMG for its loss of access to multiple carefully selected contractors with which PRMEG had contracts that were tortuously interfered with by these defendants. The damages caused by the tortious interference alleged in this complaint is estimated in not less than $500,000.00.

## XIII. RELIEF

Wherefore, the Plaintiffs respectfully pray that this Honorable Court enter judgment providing the following relief:

1.     Award Plaintiff the economic and compensatory damages caused by Defendants.

2.     Award Plaintiff treble damages as required by RICO.

3.     Award Plaintiff the costs of the action, together with reasonable attorneys' fees; prejudgment interest and any other or further relief as the Court may deem appropriate and proper due to Defendants' obstinacy.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on August 11, 2014.

*S/RAUL S. MARIANI FRANCO*
RAUL S. MARIANI FRANCO
USDC-PR NO.: 210309
P.O. BOX 9022864
SAN JUAN, PR 00902-2864
Tel.: (787) 620-0038/Fax: (787) 620-0039
rmariani@marianifrancolaw.com
ochiebosch@marianifrancolaw.com

*S/GUILLERMO RAMOS LUIÑA*
GUILLERMO RAMOS LUIÑA
USDC-PR NO.: 204007
gramlui@yahoo.com
P. O. BOX 22763, UPR Station
SAN JUAN, PR 00931-2763
Tel. (787) 620-0527
Fax (787) 620-0039