**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

PUERTO RICO MEDICAL EMERGENCY
GROUP, INC.

    **Plaintiff,**

           **v.**

IGLESIA EPISCOPAL
PUERTORRIQUEÑA, INC., *et al.*,

    **Defendants.**

**Civil No.** 14-1616 (FAB)

**OPINION AND ORDER**[1]

BESOSA, District Judge.

    Before the Court are defendants' first and second supplemental motions to dismiss the amended complaint, (Docket Nos. 35, 45), which incorporate by reference the motion to dismiss the original complaint, (Docket No. 12).  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motions to dismiss and **GRANTS** plaintiff leave to amend its complaint.

## I.   PROCEDURAL BACKGROUND

**A.   Pleadings and Motions**

    On August 11, 2014, Puerto Rico Medical Emergency Group, Inc. ("PRMEG") filed a complaint against Iglesia Episcopal Puertorriqueña, Inc. ("IEP"), Hospital Episcopal San Lucas, Inc. ("HESL"), Servicios Generales Episcopales, Inc. ("SGE"), and

---

[1]  Natalie Colvin, a second-year student at The George Washington University Law School, assisted in the preparation of this Opinion and Order.

Servicios de Salud Episcopales ("SSE"), (collectively, "defendants"). (Docket No. 1.)  The complaint alleges violations of sections 1962(b) and 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO"), and raises several state law claims.  Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on October 10, 2014. (Docket No. 12.)  Plaintiff PRMEG opposed the motion to dismiss on November 26, 2014, (Docket No. 17), and filed its first amended complaint on December 2, 2014, (Docket No. 20), with leave from the Court, (Docket No. 19).

On February 13, 2015, defendant IEP filed a supplemental motion to dismiss. (Docket No. 35.)  On March 2, 2015, PRMEG opposed that motion, (Docket No. 39), and tendered a second amended complaint, (Docket No. 39-1), for which it sought leave to file, (Docket No. 40).  Defendants opposed plaintiff's second request for leave to amend and replied to plaintiff's opposition to the supplemental motion to dismiss on March 17, 2015.  (Docket No. 43.)

On April 16, 2015, defendants filed a second supplemental motion to dismiss and again opposed plaintiff's motion for leave to file a second amended complaint, (Docket No. 45), which plaintiff PRMEG opposed, (Docket No. 47).

On May 12, 2015, the Court denied without prejudice PRMEG's motion for leave to file a second amended complaint. (Docket No. 49.)  The Court reasoned that the tendered factual allegations

in the second amended complaint did not add any detail relating to when and where defendants allegedly used mails and wires to commit fraud, and thus fell outside the relaxed standard for allowing amendments of this type.  Id. at p. 7.  The Court also found that PRMEG made no attempt to demonstrate that good cause justified amending its complaint more than two months after the Court-ordered deadline.  Id. at p. 8.

**B.    Scheduling Order Deadlines**

On December 1, 2014, the Court issued a Scheduling Order pursuant to Federal Rule of Civil Procedure 16(b).  (Docket No. 18.)  The order set, *inter alia*, the following deadlines:

- June 8, 2015:  Motions to dismiss
- November 9, 2015:  Conclusion of discovery
- January 8, 2016:  Motions for summary judgment
- May 9, 2016:  Trial

Id. at p. 22.  The Court also ordered that the filing of dispositive motions would not disrupt discovery or suspend deadlines.  Id. at p. 10.

Pursuant to the Scheduling Order, the parties filed a joint case management memorandum on February 3, 2015.  (Docket No. 34.)  In that memorandum, plaintiff PRMEG and defendants HESL, SGE, and SSE agreed that written discovery would commence no later than March 1, 2015.  Id. at pp. 43-44.

## II.   RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows the Court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In resolving a motion to dismiss, the Court employs a two-step approach.  First, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  Second, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief."  Id.  The appropriate inquiry "in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 569 n.14 (2007)).

## III.   FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

## A.   The Parties

Plaintiff PRMEG is a corporation that provides emergency room administration services and treatment to patients in various hospitals in Puerto Rico.  (Docket No. 20 at p. 4.)

All four defendants are corporations. (Docket No. 20 at
p. 3.) IEP owns HESL, SGE, and SSE. Id. at p. 3. HESL and SSE
manage several hospitals in Puerto Rico. Id. at pp. 4-5. SGE
bills for the services that HESL provides. Id. at p. 25.

The four defendants have overlapping directors, and the head
of the church at IEP is the president of the boards of directors of
HESL, SGE, and SSE. (Docket No. 20 at pp. 5, 17.) Officers of
HESL, SGE, and SSE met with and received instructions from IEP on
a regular basis. Id. at p. 17. Directors of HESL, SGE, and SSE
met with IEP officers to discuss how they could divert corporate
funds to IEP's bank accounts, and officers of IEP and SSE
coordinated a monthly contribution from HESL, SGE, and SSE to IEP.
Id. at pp. 17-18.

## B.    The PRMEG-HESL Contract

On September 25, 2007, PRMEG entered into a contract with HESL
pursuant to which PRMEG would manage and provide medical coverage
for the HESL emergency room. (Docket No. 20 at pp. 5-6.) The
contract provided that HESL would pay PRMEG $155,000 per month for
the first three months and $133,000 per month thereafter. Id. at
p. 6. The contract also gave PRMEG the right to bill insurance
companies directly for the services PRMEG provided to patients in
the HESL emergency room, and required HESL to notify the insurance
companies with which it did business that PRMEG had retained the
right to bill. Id. at p. 7. PRMEG never agreed to amend the

contract, nor did it authorize HESL to bill for services PRMEG
provided.  Id. at pp. 6-7.

Although the contract specified that absent action by HESL,
its terms would expire on September 24, 2010, HESL continued to use
PRMEG's services pursuant to the contract until the contract was
cancelled on May 2, 2014.  (Docket No. 20 at p. 5.)

## C.   Defendants' False Representations

After the PRMEG-HESL contract was executed, defendant SSE
negotiated and signed agreements with insurance companies,
representing to those insurance companies that HESL and SSE were
entitled to bill for the services PRMEG provided.  (Docket No. 20
at p. 8.)  Defendants HESL and SSE then began billing the insurance
companies, through defendant SGE, for the services PRMEG provided.
Id. at pp. 8-9.  Defendants billed the insurance companies by
sending invoices through the mail or electronically on at least a
monthly basis from 2007 through 2014, and defendants received
numerous payments in return.  Id. at p. 25.  All the while,
plaintiff PRMEG was billing the insurance companies for the same
services; defendants knew that PRMEG was billing for the same
services, but continued to represent to PRMEG that there was no
issue with PRMEG's billing.  Id. at p. 20.

## D.   PRMEG Discovers the Double Billing

In late 2013, an insurance company named Medical Card System
Corp. ("MCS") issued a claim letter to PRMEG seeking over $600,000

in reimbursements for payments MCS made for services PRMEG provided
to MCS-covered patients. (Docket No. 20 at p. 11.)  On January 14,
2014, after many requests from PRMEG, an HESL officer gave PRMEG a
list containing the statuses of HESL's contracts with insurance
companies. Id. p. 10.  From this list, PRMEG discovered that HESL
had contracts with insurance companies that permitted it to bill
for services PRMEG was providing.  Id.

MCS continues to claim over $600,000 from PRMEG. (Docket
No. 20 at p. 12.)  Defendants' billing scheme damaged PRMEG's
business operations, financial infrastructure, and business
reputation, and also caused millions of dollars of losses to third-
party insurance companies.  Id. at pp. 16-17.

## IV.  DISCUSSION

Defendants raise the following grounds in moving to dismiss
PRMEG's amended complaint: (1) that PRMEG's allegations fail to
establish the necessary elements of a section 1962(c) RICO claim;
(2) that PRMEG fails to plead the requisite injury for a section
1962(b) RICO claim; (3) that part of PRMEG's RICO claims is time-
barred; and (4) that the Court should decline to exercise

supplemental jurisdiction over PRMEG's Puerto Rico law claims.[2,3]
See Docket Nos. 12, 35, 45.  The Court addresses each argument in
turn.

## A.  Section 1962(c) RICO Claim

RICO section 1962(c) makes it unlawful "for any person
employed by or associated with any enterprise engaged in, or the
activities of which affect, interstate or foreign commerce, to
conduct or participate, directly or indirectly, in the conduct of
such enterprise's affairs through a pattern of racketeering
activity or collection of unlawful debt."  18 U.S.C. § 1962(c).
RICO section 1964(c) permits a "person injured in his business or
property by reason of a violation of section 1962" to bring a civil
RICO suit.  18 U.S.C. § 1964(c).  Thus, to state a section 1962(c)
RICO civil claim, a plaintiff must allege:  (1) injury caused by
(2) conduct, (3) of an enterprise, (4) through a pattern, (5) of

---

[2] Defendants also urge the Court to dismiss the complaint "for
plaintiff's failure to comply with this Court's RICO Case Statement
Standing Order."  (Docket No. 12 at p. 28.)  The Court does not
have a standing order for RICO cases.  See
http://www.prd.uscourts.gov/?q=standing-orders.  The Court
admonishes defendants to familiarize themselves with the Court's
standing orders and rejects their groundless request.

[3] Defendant IEP also argues in a perfunctory manner that PRMEG's
claim is unripe because PRMEG "has not exhausted all administrative
remedies before filing its [c]omplaint, pursuant to 42 C.F.R. 422
and all its subparts."  (Docket No. 35 at pp. 6-7.)  Because IEP
has done nothing more than "mention a possible argument in the most
skeletal way, leaving the Court to do counsel's work, create the
ossature for the argument, and put flesh on its bones," United
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), the Court
declines to entertain this argument.

racketeering activity.  Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).

### 1.  Injury

In its supplemental motion to dismiss, defendant IEP argues that PRMEG's RICO claims are premature and unripe because PRMEG does not allege that it had to pay back the $600,000 that MCS seeks to recoup.  (Docket No. 35 at p. 4.)  Regardless of whether the MCS claim is a present harm, the amended complaint alleges that defendants' fraudulent scheme caused other injuries to PRMEG, including economic damages to its business operations, financial infrastructure, and business reputation.  (Docket No. 20 at pp. 16-17.)  These alleged injuries are sufficient to make PRMEG's suit ripe for adjudication.

### 2.  Conduct

RICO section 1962(c)'s "conduct" element requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise.  18 U.S.C. § 1962(c).  The United States Supreme Court interprets this element to mean that a defendant must "participate[] in the operation or management of the enterprise."  Reves v. Ernst & Young, 507 U.S. 170, 183 (1993).

Here, PRMEG brings RICO claims against only IEP, contending that IEP controlled the enterprise composed of HESL, SGE, and SSE.  (Docket No. 20 at pp. 3, 26.)  Defendants argue that PRMEG fails to allege that IEP participated in the operation or

management of the enterprise.   (Docket No. 12 at pp. 9-10.)   A

cursory read of the amended complaint, however, reveals otherwise.

PRMEG alleges (1) that officers of HESL, SGE, and SSE "met with and

received instructions from [IEP] on a regular basis," (2) that

directors of HESL, SGE, and SSE met with IEP officers "to discuss

how they could channel or divert corporate funds to [IEP's] bank

accounts," (3) that officers from IEP and SSE coordinated a monthly

contribution from HESL, SGE, and SSE to IEP, and (4) that the head

of IEP's church serves as the president of the boards of directors

of HESL, SGE, and SSE.   (Docket No. 20 at pp. 5, 17-18.)   These

facts, accepted as true, demonstrate that IEP participated in the

operation of HESL, SGE, and SSE - the alleged enterprise.

Defendants' argument to the contrary is unavailing.

### 3.   Enterprise

A section 1962(c) RICO civil claim must include a

properly alleged "enterprise."   RICO defines "enterprise" as "any

individual, partnership, corporation, association, or other legal

entity, and any union or group of individuals associated in fact

although not a legal entity."   18 U.S.C. § 1961(4).   The United

States Supreme Court interprets an "associated in fact enterprise"

as one that has "at least three structural features:  a purpose,

relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the

enterprise's purpose."  <u>Boyle v. United States</u>, 556 U.S. 938, 946
(2009).

        Defendants argue that the purported enterprise consisting
of HESL, SGE, and SSE lacks the three structural features set forth
in <u>Boyle</u>.  (Docket No. 12 at pp. 11-14.)  The Court disagrees.
First, the Court reasonably infers from the factual allegations in
the amended complaint that HESL, SGE, and SSE had a common purpose
of defrauding insurance companies by causing them to pay double for
services that PRMEG provided and was contractually authorized to
bill.  <u>See</u> Docket No. 20 at pp. 16-21.  Second, the allegations
show that HESL, SGE, and SSE were closely related in several ways:
they had overlapping directors; their officers met to discuss how
to divert funds to IEP; and HESL and SSE jointly managed HESL's
emergency room while SGE billed for services provided there.  <u>See</u>
<u>id.</u> at pp. 4-5, 17, 20.  Third, these relationships had longevity:
HESL, SGE, and SSE billed insurance companies and concealed their
scheme for seven years, from 2007 through 2014.  <u>See</u> <u>id.</u> at p. 25.
PRMEG thus sufficiently alleges an "enterprise."

    **4.   Pattern**

        To establish a "pattern," RICO requires a plaintiff to
show that at least two acts of racketeering occurred within ten
years of each other.  18 U.S.C. § 1961(5).  The United States
Supreme Court adds to the "pattern" element a requirement "that the
racketeering predicates are related, and that they amount to or

pose a threat of continued criminal activity." H.J. Inc. v. Nw.
Bell Tel. Co., 492 U.S. 229, 239 (1989).  This is known as the
"continuity plus relationship" standard.  Efron v. Embassy Suites
(P.R.), Inc., 223 F.3d 12, 15 (1st Cir. 2000).  A plaintiff can
satisfy the continuity requirement in one of two ways:   open
continuity or closed continuity.  H.J., 492 U.S. at 241.

        Closed   continuity   involves   "a   series   of   related
predicates extending over a substantial period of time."  Id. at
242.  If a plaintiff alleges only a few predicate acts, or acts
that span only a few weeks or months, then closed continuity is not
established.  Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521,
529 (1st Cir. 2015).  But if "the temporal duration of the alleged
activity and the alleged number of predicate acts are so extensive
that common sense compels a conclusion of continuity, closed-ended
continuity should be found."  Id. (quoting Giuliano v. Fulton, 399
F.3d 381, 387 (1st Cir. 2005)).  For example, in Fleet Credit Corp.
v. Sion, 893 F.2d 441, 446-47 (1st Cir. 1990), ninety-five alleged
racketeering  acts  over  a  four  and  one-half  year  period  were
sufficient, without more, to find closed continuity.  In "middle
ground" cases, however, "where the duration and extensiveness of
the alleged conduct does not easily resolve the issue," courts must
examine "other indicia of continuity."  Giuliano, 399 F.3d at 387.
When a case falls into this middle ground, the First Circuit Court
of Appeals has "consistently declined to find continuity where the

Civil No. 14-1616 (FAB)                                                    13

RICO claim concerns a single, narrow scheme targeting few victims."
Home Orthopedics, 781 F.3d at 530 (quoting Giuliano, 399 F.3d
at 390).

        Here, defendants argue that PRMEG's allegations fail to
establish closed continuity because the alleged scheme was a single
financial endeavor with a single victim.  (Docket No. 45 at pp. 1-
4.)   The Court disagrees.   PRMEG maintains that defendants
committed mail or wire fraud each time they mailed or wired an
invoice to an insurance company to charge for services that PRMEG
was providing and for which defendants were not entitled to bill.
See Docket No. 20 at p. 25.   PRMEG alleges that defendants sent
these invoices at least once a month for seven years.   Id.   That
totals at least eighty-four invoices (if just one invoice was sent
to one insurance company per month), and thus at least eighty-four
predicate acts over a seven-year period.  This is comparable to the
ninety-five acts over a four and one-half year period that were
sufficiently "extensive" to establish closed continuity in Fleet
Credit.   See 893 F.2d at 446-47.   Thus, the Court finds that this
is a case where "the temporal duration of the alleged activity and
the alleged number of predicate acts are so extensive that common
sense compels a conclusion of continuity."   See Home Orthopedics,
781 F.3d 521 at 529 (quoting Giuliano, 399 F.3d at 387).
Accordingly, there is closed continuity, and this is not a "middle
ground" case in which the Court must examine "other indicia of

continuity." See Giuliano, 399 F.3d at 387. Defendants' argument
is therefore unpersuasive.

### 5.   Racketeering Activity – Heightened Pleading for Fraud

RICO provides that "racketeering activity" includes
violations of the federal mail and wire fraud statutes. 18 U.S.C.
§ 1961(1)(B); see 18 U.S.C. §§ 1341, 1343. RICO claims that plead
predicate acts of mail and wire fraud must comply with the
heightened pleading standard set forth in Federal Rule of Civil
Procedure 9(b) ("Rule 9(b)"). Feinstein v. Resolution Trust Corp.,
942 F.2d 34, 42 (1st Cir. 1991). Rule 9(b) requires that, "[i]n
alleging fraud or mistake, a party must state with particularity
the circumstances constituting fraud or mistake." Fed. R. Civ. P.
9(b). To satisfy Rule 9(b)'s particularity requirement, a
plaintiff must "go beyond a showing of fraud and state the time,
place and content of the alleged mail and wire communications
perpetrating that fraud." Cordero-Hernandez v.
Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (quoting
N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001)).

Defendants argue that PRMEG's mail and wire fraud
allegations fail to meet Rule 9(b)'s heightened pleading standard,
and thus, that PRMEG has not sufficiently alleged a predicate act
of racketeering activity. (Docket No. 12 at pp. 7-8; Docket No. 35
at pp. 2-3.) The allegation of fraud stated with the most
particularity in PRMEG's amended complaint is the following:

> To be able to consummate this scheme to defraud, to bill services not actually provided by [HESL], but by PRMEG, from 2007 and through [*sic*] 2014 the RICO enterprise used the mail and wires to electronically invoice the insurance companies, on at least a monthly basis, for monies to which the enterprise was not entitled because they belonged to PRMEG and in exchange received numerous payments either through wire or through the use of the United States Mail.

(Docket No. 20 at p. 25.)   This allegation falls short of satisfying Rule 9(b)'s particularity requirement.   It generally alleges that communications were made "on at least a monthly basis" for seven years, but offers no specific dates.   It does not identify specific persons who sent the invoices, and it does not name the insurance companies that were billed.   It does not include the places from which or to where the invoices were sent.

Other allegations in PRMEG's amended complaint are even more deficient.   For example, PRMEG regurgitates the following paragraph twelve times in its amended complaint, supplying twelve dates and twelve names of insurance companies:

> By information and/or belief on or around [DATE] the RICO enterprise fraudulently conveyed to the insurance company [NAME], through the use of the mails and wires, that [HESL] was legally able to provide a *per diem* and/or *all inclusive* arrangement to the insurance company as it had done before, but failed to inform in bad faith and with gross disregard to the truth that it had retained PRMEG to manage its emergency room and El Tuque emergency room allowing PRMEG to directly bill for the professional component of its services.

(Docket No. 20 at pp. 21-25.)   This allegation is not pled with sufficient particularity. First, allegations based on "information and belief" do not satisfy the particularity requirement "unless

the complaint sets forth the facts on which the belief is founded,"
Becher, 829 F.2d 288, and PRMEG has not provided any fact that
supports its belief, particularly concerning the dates alleged,
which appear to be plucked out of the air.  Second, the general
word "conveyed" and the conclusory allegation that "mails and
wires" were used do not indicate the nature of the fraudulent
communication - was it a phone conversation?  E-mail?  Mailed
letter?  Third, the allegation that "the RICO enterprise" did the
"conveying" does not reveal which specific defendant or person was
the responsible party.  And fourth, there is no mention of where
the fraudulent conveyance was made.

        To be sure, because PRMEG alleges an expansive scheme
spanning  several  years  and  including  hundreds  of
misrepresentations, Rule 9(b) does not require it to plead every
individual misrepresentation with specific detail.  Still, PRMEG
must  plead  the  time,  place,  and  content  of  the  fraudulent
communications with some particularity.  See Cordero-Hernandez, 449
F.3d at 244.  Setting forth the date, sender, recipient insurance
company, and mode of delivery for a representative sample of the
invoices, for example, would suffice.  See U.S. ex rel. Joshi v.
St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006)
(requiring plaintiff to provide "*some* representative examples of
[defendants'] alleged fraudulent conduct, specifying the time,
place, and content of their acts and the identity of the actors").

PRMEG tacitly conceded its shortcoming when it explained on March 2, 2015, in response to defendant IEP's supplemental motion to dismiss, that it was "not able to plead more specifically at this stage . . . without having yet conducted any discovery [as to] the 'time, place and content' of the fraudulent communications." (Docket No. 39 at p. 6.)

Generally, failure to satisfy Rule 9(b)'s particularity requirement may warrant dismissal. Cordero-Hernandez, 449 F.3d at 244. In a RICO mail and wire fraud case, however, when "details of just when and where the mail or wires were used" are missing, dismissal is not automatic. Becher, 829 F.2d at 290. Rather, the district court should make a "determination as to whether the claim as presented warrants the allowance of discovery," and if so, should "provide an opportunity to amend the defective complaint." Id. Factors to consider in making this determination are: (1) whether the plaintiff sets out "a general scheme to defraud," (2) whether the plaintiff's allegations "make it likely that the defendant used interstate mail or telecommunications facilities," and (3) whether "the specific information as to use is likely in the exclusive control of the defendant." Id. at 290-91. Courts must also keep in mind the balance between, on the one hand, Rule 9(b)'s purposes of "avoiding groundless claims" and providing adequate notice to defendants, and on the other, "the policy in favor of allowing amendments and trying cases on their merits, and

against dismissals which would deny plaintiffs their day in court."
Id. at 292.

Here, PRMEG outlines a general scheme to defraud and
alleges facts - such as the invoicing of insurance companies - that
point to the use of mail and wires in furtherance of the scheme.
Because defendants sent the invoices directly to third-party
insurance companies, PRMEG likely would not have access to the
details of where, when, and how the invoices were sent without some
discovery.  Given this, and given that policy considerations favor
trying cases on their merits, the Court finds some discovery is
warranted as to PRMEG's section 1962(c) RICO claim and that PRMEG
should be afforded an opportunity to amend its deficient complaint.
See Becher, 829 F.2d at 290-92.

The parties agreed to commence written discovery no later
than March 1, 2015.  (Docket No. 34 at pp. 43-44.)  Thus, discovery
has been underway for more than five months and is scheduled to
conclude in just three months.  See Docket No. 18 at p. 22.

For these reasons, the Court **GRANTS** plaintiff PRMEG leave
to file a second amended complaint that satisfies Rule 9(b)'s
particularity requirement on or before **September 4, 2015**.  The
Court also extends the deadline for filing motions to dismiss to
**October 2, 2015**.  If the parties need more time, they must request
it.

**B.   Section 1962(b) RICO Claim**

In addition to its section 1962(c) RICO claim, PRMEG brings a 1962(b) claim against IEP.  (Docket No. 20 at p. 26.)  RICO section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."   18 U.S.C. § 1962(b).

Only a "person injured in his business or property by reason of a violation of section 1962" may bring a civil RICO suit.  18 U.S.C. § 1964(c).  Accordingly, to state a section 1962(b) claim, a plaintiff must allege that it was injured "by reason of [the defendant's] acquisition or maintenance of control of an enterprise through a pattern of racketeering activity."   Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 92 (1st Cir. 1995); accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 202 (5th Cir. 2015) (explaining that, to state a section 1962(b) claim, plaintiff had to show that its injuries "were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity" (quoting Abraham v. Singh, 480 F.3d 351, 357 (5th Cir. 2007))).  It is not enough for a plaintiff

Civil No. 14-1616 (FAB)                                               20

to allege an injury caused by defendants' predicate acts of racketeering.  See Compagnie De Reassurance, 57 F.3d at 92.

Here, defendants argue that PRMEG's 1962(b) RICO claim should be dismissed because PRMEG fails to allege a harm caused by IEP's acquisition or maintenance of control of the enterprise through a pattern of racketeering activity.  (Docket No. 12 at pp. 21-23.) The Court agrees with defendants' argument, which PRMEG does not rebut in its opposition.  See Docket No. 17.  The alleged injuries in the amended complaint all trace back to the scheme to defraud the insurance companies, which is the predicate racketeering act in PRMEG's section 1962(c) RICO claim.  See Docket No. 20 at pp. 16-17.  There is no allegation that IEP acquired control or maintained control of the enterprise through this fraudulent scheme, or that any acquisition or maintenance of control injured PRMEG.  Thus, PRMEG has not satisfied the "acquisition or maintenance of control injury" requirement and therefore fails to state a section 1962(b) RICO claim.  Accordingly, defendants' motion to dismiss PRMEG's section 1962(b) RICO claim is **GRANTED.**

C.    **Statute of Limitations**

Civil RICO actions are subject to a four-year statute of limitations.  Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).  The limitations period begins to run when a plaintiff knew or should have known of its injury.  Lares Grp., II v. Tobin, 221 F.3d 41, 44 (1st Cir. 2000).

Here, defendants urge the Court to apply a "rule of separate accrual" to dismiss as time-barred the part of PRMEG's RICO claim that "accrued between September 24, 2007 and July 31, 2010." (Docket No. 12 at pp. 23-26.)  Defendants do not support their request, however, with any argument as to how PRMEG knew or should have known of its injury in 2010 or earlier.

According to the amended complaint, PRMEG first caught wind of defendants' fraudulent billing scheme in late 2013 when it received a claim letter from MCS.  (Docket No. 20 at pp. 10-11.)  On January 14, 2014, upon receiving a contract status list from HESL, PRMEG discovered that HESL was collecting money from other insurance companies for services PRMEG provided.  Id. at p. 10. Accepting these allegations as true, the Court reasonably infers that PRMEG learned of its injuries caused by IEP's RICO violations sometime in late 2013.  Furthermore, PRMEG alleges that even though defendants knew that insurance companies were being double-billed, defendants continued to represent to PRMEG that there was no issue with PRMEG billing the insurance companies.  Id. at p. 20.  The Court infers from this allegation that PRMEG had no information that would have warranted an investigation into whether fraud was taking place any time before 2013.  PRMEG's original complaint, filed on August 11, 2014, (Docket No. 1.), is thus well within the four-year limitations period, and defendants' underdeveloped argument is unavailing.

**D.    Puerto Rico Law Claims**

Defendants finally argue that, if PRMEG's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over its Puerto Rico law claims. (Docket No. 12 at pp. 26-28.)   Because PRMEG's section 1962(c) federal RICO claim remains and grounds jurisdiction, defendants' motion to dismiss the Puerto Rico law claims is **DENIED**.

**V.   CONCLUSION**

For the reasons discussed above, defendants' motions to dismiss, (Docket Nos. 12, 35, 45), are **GRANTED IN PART** and **DENIED IN PART**.   Defendants' request for dismissal of PRMEG's section 1962(b) RICO claim is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.   Defendants' request for dismissal of PRMEG's 1962(c) RICO claim and Puerto Rico law claims is **DENIED**.

The Court **GRANTS** plaintiff PRMEG leave to file a second amended complaint that satisfies Rule 9(b)'s heightened pleading standard for allegations of fraud on or before **September 4, 2015**. The Court extends the deadline for filing motions to dismiss to **October 2, 2015**.   If the parties need more time, they must request it.

The following deadlines in the Scheduling Order (Docket No. 18) remain unchanged, unless the parties need and request more time: November 9, 2015 (conclusion of discovery); January 8, 2016 (motions for summary judgment); and May 9, 2016 (trial).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 7, 2015.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE