IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO MEDICAL EMERGENCY
GROUP, INC.

**Plaintiff,**

**v.**                            Civil No. 14-1616 (FAB)

IGLESIA EPISCOPAL
PUERTORRIQUEÑA, INC., *et al.*,

**Defendants.**

## OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is defendants' motion to dismiss the second amended complaint. (Docket No. 84.)  For the reasons explained below, the Court **DENIES** defendants' motion.

### I.   PROCEDURAL BACKGROUND

On August 11, 2014, Puerto Rico Medical Emergency Group, Inc. ("PRMEG") filed a complaint against Iglesia Episcopal Puertorriqueña, Inc. ("IEP"), Hospital Episcopal San Lucas, Inc. ("HESL"), Servicios Generales Episcopales, Inc. ("SGE"), and Servicios de Salud Episcopales ("SSE"), (collectively, "defendants").  (Docket No. 1.)  The complaint alleged violations of sections 1962(b) and 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO") and

---

[1] Nathanael R. Krevor, a second-year student at The George Washington University Law School, assisted in the preparation of this Opinion and Order.

raised several state law claims.  Id.  PRMEG filed an amended complaint on December 2, 2014.  (Docket No. 20.)  Defendants moved to dismiss the amended complaint.  (Docket Nos. 35, 45.)

On August 7, 2015, the Court granted in part and denied in part defendants' motions to dismiss.  (Docket No. 50.)  The Court dismissed with prejudice PRMEG's section 1962(b) RICO claim.  Id. at p. 20.  As to PRMEG's section 1962(c) RICO claim, the Court held that PRMEG did not meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") to allege the predicate acts of mail and wire fraud.  Id. at pp. 14-18.  Despite the deficiency, the Court did not dismiss the claim and instead granted PRMEG leave to file a second amended complaint.  Id. at pp. 17-18.

On September 22, 2015, PRMEG filed a second amended complaint. (Docket No. 69.)  Defendants now move to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), (Docket No. 84), and PRMEG opposes, (Docket No. 91).

## II.  RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows the Court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In resolving a motion to dismiss, the Court employs a two-step approach.  First, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal

labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, the Court "take[s] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief." Id. The appropriate inquiry "in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2007)).

### III.   FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

**A.    The Parties**

Plaintiff PRMEG is a corporation that provides emergency room administration services and treatment to patients in various hospitals in Puerto Rico.  (Docket No. 69 at p. 4.)

All four defendants are corporations.  (Docket No. 69 at p. 3.)  IEP owns HESL, SGE, and SSE.  Id. at p. 4.  HESL and SSE manage several hospitals in Puerto Rico.  Id. at pp. 4-5.  SGE bills for the services that HESL provides.  Id. at p. 27.

**B.    The PRMEG-HESL Contract**

On September 25, 2007, PRMEG entered into a contract with HESL pursuant to which PRMEG would manage and provide medical coverage

for the HESL emergency room.  (Docket No. 69 at p. 8.)  The
contract provided that HESL would pay PRMEG $155,000 per month for
the first three months and $133,000 per month thereafter.  Id. at
p. 10.  The contract also gave PRMEG the right to bill insurance
companies directly for the services PRMEG provided to patients in
the HESL emergency room, and required HESL to notify the insurance
companies with which it did business that PRMEG had retained the
right to bill.  Id. at pp. 10-11.  PRMEG never agreed to amend the
contract, nor did it authorize HESL to bill for services PRMEG
provided.  Id. at pp. 9-10.

Although the contract specified that absent action by HESL,
its terms would expire on September 24, 2010, HESL continued to use
PRMEG's services pursuant to the contract until the contract was
cancelled on May 2, 2014.  (Docket No. 69 at p. 9.)

**C.   Defendants' False Representations**

After the PRMEG-HESL contract was executed, defendant SSE
negotiated and signed agreements with insurance companies,
representing to those insurance companies that HESL and SSE were
entitled to bill for the services PRMEG provided.  (Docket No. 69
at pp. 12-16.)  For example, on January 2, 2008, Ivette Segarra
Roman of SSE sent through U.S. mail a proposed contract regarding
the billing arrangement for services provided in HESL's emergency
room, including services provided by PRMEG, to insurance company
Medical Card System Corporation ("MCS").  Id. at pp. 12-13.  MCS

sent a counter-proposal through U.S. Mail to Jaime Rivera of SSE on June 23, 2008.  Id. at p. 13.  On August 7, 2008, SSE sent a fax accepting MCS's proposal.  Id.  As another example, on April 14 and 17, 2010, employees of SSE and Pan-American Life Insurance Company ("PALIC") sent letters through the U.S. mail negotiating and accepting a proposed contract for fee arrangements regarding services provided in the HESL emergency room, including services provided by PRMEG.  Id. at pp. 15-16.

Defendants HESL and SSE then began billing the insurance companies, through defendant SGE, for the services PRMEG provided. (Docket No. 69 at pp. 16-17.)  Defendants billed the insurance companies by sending thousands of invoices through the mail or electronically from 2007 through 2014, and defendants received numerous payments in return.  (Docket Nos. 69 at pp. 32-33; 69-1 through 69-6.)  For example, SSE sent reimbursement claims through e-mail for services provided by PRMEG in HESL's emergency room to PALIC on hundreds of occasions, including on September 6, 2007; December 23, 2008; April 16, 2009; February 2, 2010; February 11, 2011; May 3, 2012; March 7, 2013; and June 10, 2014.  (Docket Nos. 69 at pp. 33-34; 69-5 at pp. 1-3, 6, 10, 17, 24, 31.)  PALIC paid defendants based on those claims.  (Docket No. 69-5.)

All the while, PRMEG was billing the insurance companies for the same services.  (Docket No. 69 at p. 28.)  Defendants knew that

PRMEG was billing for the same services, but continued to represent to PRMEG that there was no issue with PRMEG's billing.  Id.

**D.    PRMEG Discovers the Double Billing**

In late 2013, MCS issued a claim letter to PRMEG seeking over $600,000 in reimbursements for payments MCS made for services PRMEG provided to MCS-covered patients.  (Docket No. 69 at p. 19.)  On January 14, 2014, after many requests from PRMEG, an HESL officer gave PRMEG a list containing the statuses of HESL's contracts with insurance companies.  Id. p. 18.  From this list, PRMEG discovered that HESL had contracts with insurance companies that permitted it to bill for services PRMEG was providing.  Id.

MCS continues to claim over $600,000 from PRMEG.  (Docket No. 69 at p. 20.)  Defendants' billing scheme damaged PRMEG's business operations, financial infrastructure, and business reputation, and also caused millions of dollars of losses to third-party insurance companies.  Id. at pp. 24-25.

## IV.   DISCUSSION

Defendants move to dismiss PRMEG's section 1962(c) RICO claim and urge the Court to decline to exercise supplemental jurisdiction over PRMEG's Puerto Rico law claims.  (Docket No. 84.)

**A.    Section 1962(c) RICO Claim**

RICO section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c). RICO section 1964(c) permits a "person injured in his business or property by reason of a violation of section 1962" to bring a civil RICO suit.  Id. § 1964(c).  Thus, to state a section 1962(c) RICO civil claim, a plaintiff must allege:  (1) injury caused by, (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity.  Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005).  The Court previously found the first four elements of PRMEG's RICO claim sufficiently pled, see Docket No. 50, and now considers only the fifth element in the context of PRMEG's second amended complaint.

### 1.   Racketeering Activity – Heightened Pleading for Fraud

Defendants argue that PRMEG's mail and wire fraud allegations fail to meet Rule 9(b)'s heightened pleading standard, and thus, that PRMEG has not sufficiently alleged a predicate act of racketeering activity.  (Docket No. 84 at pp. 5-8.)

RICO provides that "racketeering activity" includes violations of the federal mail and wire fraud statutes.  18 U.S.C. § 1961(1)(B); see id. §§ 1341, 1343.  RICO claims that plead predicate acts of mail and wire fraud must comply with the heightened pleading standard set forth in Rule 9(b).  Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991).  Rule 9(b)

requires that, "[i]n alleging fraud or mistake, a party must state
with particularity the circumstances constituting fraud or
mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s
particularity requirement, a plaintiff must "go beyond a showing of
fraud and state the time, place and content of the alleged mail and
wire communications perpetrating that fraud." Cordero-Hernandez v.
Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006) (quoting
N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001)).
Rule 9(b) does not require allegations of every fraudulent claim;
rather, "provid[ing] *some* representative examples of [defendants']
alleged fraudulent conduct" satisfies Rule 9(b)'s particularity
requirement and allows defendants to respond to specific
allegations. U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441
F.3d 552, 557 (8th Cir. 2006).

      Here, in its second amended complaint, PRMEG provides
dates, senders, receivers, and modes of delivery for communications
in furtherance of the fraudulent scheme. (Docket Nos. 69 at pp.
12-16; 69-1 through 69-5.) PRMEG details the contractual
negotiations and agreements conducted by defendants using the mail
and wires with specific insurance companies, including dates of
transmission and modes of delivery. (Docket No. 69 at pp. 12-16.)
PRMEG also provides over 200 pages of fraudulent claims that SSE
submitted to insurance companies MCS, PALIC, and MAPFRE using e-
mail, including dates of transmission, claim codes to identify the

services for which defendants billed, and claim dollar amounts. (Docket Nos. 69 at p. 33; 69-1 through 69-6.)   The exhibits attached to PRMEG's second amended complaint list thousands of fraudulent claims submitted from 2007 to 2014. (Docket Nos. 69-1 through 69-6.)  Contrary to defendants' argument that the exhibits themselves do not contain false representations, (Docket No. 84 at p. 8), PRMEG references the exhibits in its second amended complaint and states that the exhibits list claims for which only PRMEG had the right to bill, establishing them as connected to the fraudulent scheme, (Docket No. 69 at pp. 33-34).

PRMEG responded adequately to the Court's instructions in its previous Opinion and Order.  Its second amended complaint satisfies the Rule 9(b) heightened pleading standard for alleging fraud.  Accordingly, defendants' motion to dismiss PRMEG's section 1962(c) RICO claim for failing to meet the Rule 9(b) heightened pleading standard is **DENIED.**

### 2.   Mail and Wire Fraud

Defendants argue that PRMEG does not allege sufficient facts to state a claim of mail and wire fraud.  (Docket No. 84.) The elements of mail and wire fraud are (1) a scheme to defraud; (2) knowing and willful participation in the scheme with the intent to defraud; and (3) the use of the mails or interstate wire in furtherance of the fraudulent scheme.  See Bonilla v. Volvo Car Corp., 150 F.3d 62, 66 (1st Cir. 1998).  Because defendants do not

contest the allegation that they knowingly and willfully participated in the scheme with the intent to defraud, the Court addresses defendants' arguments regarding the remaining two elements.

> a.  **Scheme to Defraud**

Defendants argue (1) that there was no affirmative misrepresentation on their part; (2) that in the absence of affirmative misrepresentation, mail and wire fraud cannot be premised on a non-disclosure without an independent duty to disclose; and (3) that PRMEG's allegations amount merely to a breach of contract, which does not constitute a predicate act of racketeering.  (Docket No. 84 at pp. 6-9.)

A scheme to defraud "must be intended to deceive another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990).  "[T]he *locus classicus* of fraud is a [party's] affirmative false statement or a half truth, *i.e.*, a statement that is literally true but is made misleading by a significant omission." Bonilla, 150 F.3d at 69; see United States v. Tum, 707 F.3d 68, 72 (1st Cir. 2013) (explaining that a scheme must employ "false or omitted statements that a reasonable person would consider important in deciding what to do").  Although dependent on context, there are circumstances where non-disclosure amounts to

fraud. See Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 10 (1st
Cir. 2007) (citing cases in which courts found fraud based on non-
disclosure where defendant's statements required further disclosure
to avoid being misleading or where defendant withheld information
with the intent to deceive); Bonilla, 150 F.3d at 70 (accepting
arguendo that the sale of a car "where the salesman made no formal
representations about the car, although knowing it to have a . . .
lawnmower engine in place of a car engine," could be fraud); United
States v. Keplinger, 776 F.2d 678, 697-99 (7th Cir. 1985) (finding
evidence of fraud where laboratory omitted from toxicity report an
opinion that a drug had some toxic effects because without that
opinion the report implied that the drug was completely harmless).

        Here, contrary to defendants' argument, PRMEG does
allege that defendants made affirmative misrepresentations.
Specifically, in their negotiations with various insurance
companies, defendants misrepresented that they had contracted for
the right to bill the insurance companies for PRMEG's services in
HESL's emergency room.  (Docket No. 69 at pp. 12-16.)  At a
minimum, a failure to disclose to the insurance companies that
PRMEG retained the right to bill for services provided in HESL's
emergency room would render the entire negotiation process
misleading.  Like the example provided in Bonilla, 150 F.3d at 70,
of the car salesman who sells a car with a lawnmower engine, the
right to submit reimbursement claims to insurance companies for

PRMEG's services is an essential element of defendants' contracts with those insurance companies, and the failure to disclose that fact pushes the negotiations from good salesmanship to fraud. Defendants also misrepresented to PRMEG that there were no conflicts with PRMEG directly billing insurance companies for services performed in HESL's emergency room. (Docket No. 69 at p. 28.) Finally, by sending claims for reimbursement to various insurance companies, defendants affirmatively misrepresented that they were entitled to reimbursement. Id. at pp. 33-34. These examples, as alleged, are affirmative actions performed by defendants.

PRMEG's allegations amount to much more than a breach of contract. The RICO claim is not dependent on the fact that defendants breached their contract with PRMEG by failing to terminate contracts with insurance companies. It is the fraudulent misrepresentations that establish the scheme to defraud. At this stage of the litigation, the Court accepts as true PRMEG's allegation that the contract gave it, not defendants, the right to bill insurance companies for services PRMEG provided in HESL's emergency room.

Defendants' motion to dismiss PRMEG's section 1962(c) RICO claim for failing to allege a fraudulent scheme is **DENIED**.

### b.   Use of the Mails and Wires

Defendants argue that PRMEG failed to plead sufficient facts to allege that defendants used the mails and wires in furtherance of their fraudulent scheme because (1) the negotiations and contracts transmitted between defendants and insurance companies were "routine mailings"; and (2) the claims listed in the exhibits attached to PRMEG's second amended complaint were not falsified.  (Docket No. 84 at pp. 7-9.)

The third element of mail and wire fraud is the use of the mails or interstate wire in furtherance of a fraudulent scheme.  See 18 U.S.C. § 1341 (mail fraud); id. § 1343 (wire fraud).  For this element to be met, "the use of the mails need not be an essential element of the scheme but need only be 'incident to an essential part of the scheme' or 'a step in the plot.'"  United States v. Stergios, 659 F.3d 127, 133 (1st Cir. 2011) (quoting Schmuck v. United States, 489 U.S. 705, 710-11 (1989)) (holding that defendant's request and receipt by mail of ATM and debit cards used to make fraudulent charges and withdrawals satisfied the use of the mails element).  The element may be met even though no false information is transmitted through the mails or wire.  Schmuck, 489 U.S. at 715 (acknowledging cases of mail fraud where the mailings are "innocent" and "routine"); United States v. Martin, 228 F.3d 1, 16 (1st Cir. 2000) ("[T]he e-mails themselves need not be fraudulent; rather, it is the scheme itself that must rely on false

Civil No. 14-1616 (FAB)                                                    14

pretenses."). The operative requirement is that the use of the mails and wires "perpetuate[s]" or "conceal[s]" the fraud. <u>See</u> <u>Feinstein</u>, 942 F.2d at 46 (holding that billing notices not related to fraudulent scheme did not satisfy the use of the mails or wires element).

Here, the use of the mails and wires was related to the fraudulent scheme and necessary to execute it. Defendants mailed documents to insurance companies to enter into contracts for the purpose of later submitting fraudulent claims. (Docket No. 69 at pp. 12-16.) Furthermore, defendants submitted claims for reimbursement through e-mail to solicit payment for services provided by PRMEG, which was the goal of the scheme. <u>Id.</u> at p. 33. Not only did these communications involve affirmative misrepresentations, none of these communications was required to be false to satisfy the use of the mails and wire element of mail and wire fraud. <u>See</u> <u>Schmuck</u>, 489 U.S. at 715; <u>Martin</u>, 228 F.3d at 16.

Thus, defendants' motion to dismiss PRMEG's 1962(c) RICO claim for failing to allege the use of the mails and wires in furtherance of a fraudulent scheme is **DENIED.**

**B.   Puerto Rico Law Claims**

Defendants finally argue that, if PRMEG's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over its Puerto Rico law claims. (Docket No. 84 at pp. 9-11.) Because PRMEG's section 1962(c) federal RICO claim

Civil No. 14-1616 (FAB)                                                    15

remains and grounds jurisdiction, defendants' motion to dismiss the

Puerto Rico law claims is **DENIED.**

### V.   CONCLUSION

For the reasons discussed above, defendants' motion to

dismiss, (Docket No. 84), is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 16, 2016.


                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE