IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO MEDICAL EMERGENCY GROUP, INC. | |
| **Plaintiff,** | |
| **v.** | **Civil No.** 14-1616 (FAB) |
| IGLESIA EPISCOPAL PUERTORRIQUEÑA, INC., *et al.*, | |
| **Defendants.** | |

## OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is Iglesia Episcopal Puertorriqueña, Inc., Hospital Episcopal San Lucas, Inc., Servicios Generales Episcopales, Inc., and Servicios de Salud Episcopales' (collectively, "defendants") motion to dismiss the second amended complaint for failure to join an indispensable party pursuant to Federal Rule of Civil Procedure 12(b)(7) ("Rule (12)(b)(7)"). (Docket No. 146.) For the reasons set forth below, the Court **DENIES** defendants' motion to dismiss. Both parties, however, are required to **SHOW CAUSE** as to whether Saint Lukes Memorial Hospital Inc. is not already a party to this litigation.

---

[1] Ian Joyce, a second-year student at the Vanderbilt School of Law, assisted in the preparation of this Opinion and Order.

## I.    FACTUAL BACKGROUND

The situation presented to the Court is, frankly, unique.  To clarify the sole issue in dispute – the proposed joinder of a non-party – the Court will omit portions of the factual and procedural background, instead focusing only on the pertinent information regarding defendant's motion to dismiss pursuant to Rule 12(b)(7).  Furthermore, the Court **ORDERS** the parties to use the abbreviations used in this Opinion and Order in their pleadings moving forward.

### A.    The General Corporate Structure

Iglesia Episcopal Puertorriqueña ("IEP") is a non-profit organization existing pursuant to the laws of Puerto Rico.  (Docket No. 146-2 at p. 6.)  IEP operates the Episcopal Church of Puerto Rico and a number of health care providers.  Id.  As part of its network, IEP controls Servicios de Salud Episcopales, Inc. ("Servicios de Salud"), Servicios Generales Episcopales, Inc. ("Servicios Generales"), and Saint Lukes Memorial Hospital, Inc. ("Saint Lukes").[1]  Id.

### B.    "Hospital Episcopal San Lucas"

In 1999 IEP created "Hospital Episcopal San Lucas Inc." ("HESL Inc."), a non-profit designed to provide healthcare

---

[1] The entity the Court refers to as "Saint Lukes" is sometimes spelled with an apostrophe (ie, "Saint Luke's Inc.") (See Docket No. 146-3 at p. 5.)  The Court will omit the apostrophe to be more consistent with the pleadings of this case and to reflect the name used in the certificate of incorporation.  (Docket No. 146-3 at p. 53.)

services to the Ponce community through operation of an acute-care hospice facility ("Hospital Episcopal San Lucas I"). (Docket No. 146 at p. 3.) The plans for HESL Inc. to operate Hospital Episcopal San Lucas I never materialized. Id.

In September 2000, IEP incorporated Saint Lukes. (Docket No. 146-3 at p. 53.) Servicios de Salud is the sole corporate member of Saint Lukes. (Docket No. 146-3 at p. 1, 57.) Saint Lukes frequently does business as "Hospital Episcopal San Lucas" and related names. (Docket No. 146 at p. 4, 146-3 at p. 1.) Indeed, the District of Puerto Rico has used the names "Saint Luke's Memorial Hospital" and "Hospital Episcopal San Lucas" interchangeably in other litigation involving Saint Lukes. Id.; see Maldonado-Rodriguez v. Saint Luke's Memorial Hospital, Inc., 940 F.Supp.2d 30, 32 (D.P.R. 2013) (Perez-Gimenez, J.) ("On April 30, 2010, plaintiffs [. . .] filed the above-captioned claim against defendants St. Luke's Memorial Hospital, Inc., d/b/a Hospital Episcopal San Lucas ('HESL' or 'the Hospital' or 'the Defendant.'").

On November 6, 2000 Saint Lukes, with Servicios de Salud as a guarantor, purchased Ponce Regional Hospital from the Commonwealth of Puerto Rico ("Hospital Episcopal San Lucas II"). (Docket Nos. 146 at p. 4, 146-3 at pp. 5, 9.) HESL Inc. entered into a 25-year management plan with Saint Lukes to manage Hospital

Episcopal San Lucas II.  (Docket No. 146-2 at p. 6.)  The agreement

was terminated on January 1, 2007, however, at which point Saint

Lukes took control of management.[2]  (Docket No. 146-2 at p. 6.)

Subsequently, the majority of HESL Inc.'s assets were liquidated

and transferred to Saint Lukes and HESL Inc. has not operated as

a business entity since the transfer.  (Docket Nos. 99 at p. 4,

146-2, and 146-3 at pp. 3, 155-169.)

**C.    "Hospital Episcopal San Lucas" in the professional service contract**

On September 25, 2007, nearly nine months after Saint

Lukes took over management of Hospital Episcopal San Lucas II,

Puerto Rico Medical Emergency Group ("PRMEG") entered into a

professional service contract ("PS Contract") with an organization

identified interchangeably in the agreement as "Hospital Episcopal

San Lucas" and "HESL."  (Docket No. 146-3 at p. 102.)  The PS

Contract identified "Hospital Episcopal San Lucas" as the

"operator of the facilities known as Hospital Episcopal San Lucas."

(Docket No. 146-3 at p. 102.)

The contract provided that "Hospital Episcopal San

Lucas" would pay PRMEG $155,000 per month for the first three

---

[2] Defendants' aver, through citation to Julio Ruiz's (The Chief Executive Officer of Servicios de Salud) declaration that HESL Inc. has "never operated." (Docket No. 146 at p. 3.)  The Court notes that Ruiz's declaration merely states that HESL Inc. has not operated "[d]uring times relevant to the complaint." (Docket No. 146-3 at p. 3.)

months of the PS Contract and $133,000 per month thereafter.
(Docket No. 69 at p. 8.) In turn, PRMEG agreed to operate Hospital
Episcopal San Lucas II's emergency room. (Docket No. 146-3 at
p. 102-116.) The payments made to PRMEG were issued by Saint
Lukes. (Docket No. 146-3 at p. 3.)

The basis of the litigation between PRMEG and defendants
is an alleged breach of the PS Contract. (Docket No. 69 at p. 2.)

D.    **The Served Codefendant "Hospital Episcopal San Lucas Inc."**

Upon filing its complaint, PRMEG served process on
"Hospital Episcopal San Lucas, Inc.," IEP, Servicios de Salud, and
Servicios Generales. (Docket No. 3.) "Hospital Episcopal San
Lucas Inc.," Servicios de Salud, and Servicios Generales were all
served at the same location and retain the same legal counsel.
(Docket Nos. 3 and 8.)

Early in this litigation, defendants appeared to admit
in their answer to the second amended complaint that the served
co-defendant "Hospital Episcopal San Lucas Inc." was, in fact, the
entity that signed the PS Contract:

> "COMES NOW Iglesia Episcopal Puertorriqueña,
> Inc. ("IEP"), **Hospital Episcopal San Lucas,
> Inc. ("HESL")**, Services de Salud Episcopales,
> Inc. ("SSE") and Servicios Generales
> Episcopales, Inc. ("SGE") (collectively
> "Defendants") . . .

> 4.18: Allegations contained on [sic] paragraph
> 4.18 of the Second Amended Complaint are
> **admitted to the extent that HESL and PRMEG**
> **entered into an agreement on September 25,**
> **2007 . . .**
>
> 4.21: Allegations contained on [sic] paragraph
> 4.21 of the Second Amended Complaint are
> **admitted as to the fact that the contract**
> **between Plaintiff and HESL concluded on**
> **September 24th, 2010 . . .**
>
> 4.54: Allegations contained on [sic] paragraph
> 4.54 are **admitted as to the fact that once the**
> **contractual relationship between Plaintiff**
> **and HESL elapsed**, a new relationship emerged
> . . .
>
> 5.2: Allegations contained on [sic] paragraph
> 5.2 are denied.   As per Plaintiff's own
> Complaint **the alleged fraudulent act and**
> **conspiratorial actions depend on an alleged**
> **breach of contract by HESL**.  Furthermore, and
> for argumentative purposes only, if there ever
> was a breach of contract, such agreement
> ceased on September, 2010 . . ."

(Docket No. 83.) (emphasis added).  After two motions to dismiss

and a Rule 26 conference, defendants first mentioned a "third

party" in response to a motion to compel discovery.  (Docket No. 93

at p. 2.)   Defendants averred they could not produce various

financial documents because "[t]he documents requested, may be in

possession or control of another entity which is not a party to

the instant case."  Id.

PRMEG responded, making the first explicit reference to

Saint Lukes:

> "While we are left to speculate which
> mysterious entity is the one that possesses
> the damaging information, from Defendants'
> recent disclosures **it may be inferred that
> they are referring to Saint Lukes Memorial
> Hospital, Inc.** This entity is also controlled
> by Iglesia Episcopal Puertoriqueña (*sic*) and
> has the same Board of Directors as the RICO
> Enterprise Defendants. Also, Iglesia
> Episcopal's Bishop, controls the board, as he
> does with the RICO Enterprise Defendants . . .
> PRMEG has recently learned that at the same
> time San Lucas Hospital, Inc. was signing the
> services contract with it, Iglesia Episcopal
> Puertorriqueña was in the process of
> liquidating such corporate entity and passing
> most of its assets to Saint Luke's Memorial
> Hospital, Inc. **Thus, this "other entity" that
> presumably possesses the information
> requested by PRMEG is the surviving entity of
> the proposed liquidation of Hospital San
> Lucas, Inc.**"

(Docket No. 99 at pp. 3-4.) (emphasis added). PRMEG later changed

its approach, describing Saint Lukes as a non-party to the

litigation that was, nonetheless, "part and parcel of the RICO

Enterprise Defendants."[3] (Docket No. 114 at p. 2.) Notably, when

PRMEG took the deposition of Pedro Barez, the Chief Operating

Officer of Saint Lukes, PRMEG's attorney stated, "I will be making

questions **regarding a non-party to this case, Saint Luke's Memorial

Hospital . . .**" (Docket No 146-7 at pp. 10, 16.) (emphasis added).

---

[3] The Court notes that when PRMEG references Saint Lukes in the pleadings it
takes pains to distinguish the entity from the defendants. <u>See</u> <u>e.g.</u>, Docket
No. 109 at p. 11 ("At present the Rico Enterprise Defendants and St. Lukes
Memorial Hospital have not produced any person who could testify . . .")

        The Court first addressed Saint Lukes in an Opinion and

Order concerning a motion to compel discovery filed by PRMEG.

(Docket No. 121 at 15-16.)   The Court denied PRMEG's motion to

compel Saint Lukes to produce discovery because Saint Lukes was,

at that time, indisputably a non-party.   Id.   The Court addressed

PRMEG's allegations that Saint Lukes and the defendants were

intertwined   corporations,   cautioning   explicitly   that   "[i]f

defendants have possession, custody, or control of documents held

by [Saint Lukes] and those documents have previously been requested

by PRMEG, this part of the Court's Opinion and Order will not

protect defendants from sanctions for failure to produce those

documents."[4]   Id. at p. 16.

        Two years and three months after the commencement of

this litigation, defendants filed their third motion to dismiss,

this time invoking Rule 12(b)(7) to argue that Saint Lukes is an

indispensable   party.   (Docket   No.   146.)   In   their   motion,

defendants supplied the Court with over 400 pages of documentation

signifying that Saint Luke's had been the true party to the PS

Contract.   This includes, *inter alia*:   the Ruiz declaration, an

_____

[4] The   Court   initially   disregarded   PRMEG's   accusations   regarding   the
"intertwined" relationship of IEP, Servicios de Salud and Saint Lukes because
these accusations had no factual basis. (Docket No. 121 at p. 16.) Defendants,
however,   have   since   provided   documentation   demonstrating   the   business
relationship between the parties.   (Docket Nos. 146-2 at p. 7 and 146-3 at
p. 1.)

asset purchase agreement entered into between "Saint Luke's Memorial Hospital, Inc." and the Commonwealth of Puerto Rico for the sale of Hospital Episcopal San Lucas II, insurance contracts entered into by Saint Lukes in which Saint Lukes operated under various forms of the name "Hospital Episcopal San Lucas," the PS Contract, "Saint Lukes Memorial Hospital" checks delivered to PRMEG, HESL Inc.'s liquidation basis financial statement, and the previously mentioned Barez deposition.  (Docket No. 146-1 to 7.)

PRMEG opposed the motion to dismiss pursuant to Rule 12(b)(7).  (Docket No. 156.)  Defendants replied to PRMEG's opposition to the motion to dismiss, Docket No. 159, and PRMEG replied, Docket No. 162.

## II.  STANDARD

A party may move for dismissal of an action for failure to join a party pursuant to Federal Rule of Civil Procedure 19 ("Rule 19").  Fed. R. Civ. P. 12(b)(7).  Rule 19 governs the joinder of parties.  Courts employ a two-step approach to establish whether an action should be dismissed pursuant to Rule 12(b)(7).  Fed. R. Civ. P. 19; see United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2009).  First, a court analyzes "whether the person fits the definition of those who should 'be joined if feasible' under rule 19(a)."  Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon, 728 F.Supp. 2d. 14, 26 (D.P.R. 2010) (Besosa, J.).  If

the person is required, then the Court ascertains whether joinder is feasible. Id. at 27.

Rule 19 "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." Bacardi Int'l. Ltd. v. V. Suarez & Co., 719 F.3d 1, 9 (1st Cir. 2013). Courts "should keep in mind the policies that underlie Rule 19, 'including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.'" Picciotto v. Cont'l. Cas. Co., 512 F.3d 9, 15-16 (1st Cir. 2008) (citing Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982)).

## III. DISCUSSION

Defendants argue that the "Hospital Episcopal San Lucas" described in the PS Contract was in actuality Saint Lukes, doing business as "Hospital Episcopal San Lucas", and as such is a necessary party to this action which has not been joined. (Docket No. 146 at pp. 6, 21.) PRMEG counters that defendants admitted the served party "Hospital Episcopal San Lucas Inc." was a party to the contract and are estopped from arguing that a different entity signed the contract. (Docket No. 156 at p. 5.)

Generally, a pleading that admits an allegation is binding. Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010); AES Puerto Rico, L.P. v. Trujillo-Panisse, 133 F.Supp.3d 409, 427 (D.P.R. 2015) (Besosa, J.)  There are, of course, limits to what a party can admit.  Harrington, 610 F.3d at 31.  Importantly, in order to be binding, an admission must be clear.  See id.  If there is any doubt, pleadings must be "construed so as to do justice." Fed. R. Civ. P. 8(e); JJ Water Works, Inc. v. San Juan Towing and Marine Services, Inc., 59 F.Supp.3d 380, 392 at n.10 (D.P.R. 2014) (McGiverin, J.)

Defendants' admission that the served "HESL" is a party to the contract was clear and unequivocal.  Defendants themselves used the acronym "HESL" as shorthand for the served party "Hospital Episcopal San Lucas Inc.," and then stated unambiguously that "HESL" entered into a contract with PRMEG.  Undisputedly, this is a "clear" admission.  That PRMEG used several different names to refer to the party entering into the contract in the complaint, and that multiple business entities use similar names, does not undermine the clarity of defendants' admission.  This is especially true given that the defendants are complex business entities represented by counsel, and themselves own and control all relevant parties.

The Court, however, is satisfied by defendants' evidence, the authenticity of which PRMEG does not challenge, that the "Hospital Episcopal San Lucas" described in the PS Contract may, in fact, be Saint Lukes.  Parties to a contract are generally indispensable to litigation arising from the contract.  See Blacksmith Invs., LLC. v. Cives Steel Co., 228 F.R.D. 66, 74 (D. Mass. 2005) ("it is well established that a party to a contract which is the subject of the litigation is considered a necessary party.") (citation omitted).  Joinder of an indispensable party may not be waived.  Fed. R. Civ. P. 12(h)(2).  Consequently, defendants' admission does not preclude the joinder of Saint Lukes.

The Court will not rule in an information vacuum.  The parties must elucidate whether Saint Lukes is already a party to the litigation.  Saint Lukes is a non-profit corporation that frequently conducts business under a variety of names, including: "Hospital Episcopal San Lucas."  See No. 146-3 at p. 94 ("Hospital Episcopal San Lucas"), p. 75 ("Hospital San Lucas") and p. 88 ("Hospital San Lucas-Ponce"); see generally, South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., Civil Action No. 12-11663-Gao, 2015 WL 846533, at *7 (D. Mass. Feb. 26, 2015) ("A corporation, including a religious corporation [. . . ] may adopt names other than its incorporated name.")  Here, a non-profit corporation identified as "Hospital Episcopal San Lucas" entered

into a contract with PRMEG. An institution known as "Hospital San Lucas Episcopal Inc." was served at the beginning of this litigation. (Docket No. 8.) Defendants admitted that the served "Hospital San Lucas Episcopal Inc." was a party to the PS Contract. Defendants later proved that the "Hospital Episcopal San Lucas" in the PS Contract was Saint Lukes. Therefore, it logically follows that "Hospital Episcopal San Lucas Inc." in this litigation is, in fact, Saint Lukes, operating pursuant to the name "Hospital Episcopal San Lucas."

Alternatively, HESL Inc., which defendants recently argue is not Saint Lukes, but is a separate entity that has been inactive since at least 2008. (Docket No. 146-3 at p. 3, 157-169.) The CEO of Servicios de Salud himself stated that "[d]uring times relevant to the complaint, [HESL Inc.] has not operated." (Docket No. 146-3 at p. 3.) Indeed, while they have provided a plethora of evidence proving Saint Lukes was the party to the PS Contract, defendants have provided no evidence, outside of showing that a corporation existed by the name of "Hospital Episcopal San Lucas Inc.," suggesting that HESL Inc. is the entity litigating this case. Indeed, there is no evidence proving HESL Inc. even continues to exist.[5]

---

[5] The latest financial statement supplied to this Court regarding HESL Inc. is an "Informe Anual" conducted in 2015, which shows $0.00 in assets and $0.00 in liabilities. (Docket 146-3 at p. 168.)

This ambiguity is compounded by PRMEG's persistent stipulations that Saint Lukes is, in fact, a non-party. To that point, in its opposition to motion to dismiss, PRMEG does not factually challenge the notion that the served "Hospital Episcopal San Lucas Inc." was the party to the PS Contract. Rather, PRMEG relies on defendants' admissions and, in the alternative, argues that Saint Lukes is not an indispensable party.

In sum, four separate entities identify as "Hospital Episcopal San Lucas," including Saint Luke's Memorial Hospital. Saint Lukes is intertwined with Servicios de Salud and IEP on the corporate level. (Docket Nos. 146-2 at p. 6-7, 146-3 at p. 1, 55-57.) Saint Lukes entered into the PS Contract with PRMEG under the name "Hospital Episcopal San Lucas." (Docket Nos. 146 at p. 2 146-3 at p. 102.) Later, a "Hospital Episcopal San Lucas Inc." was served at the same location as Servicios de Salud — the sole corporate member of Saint Lukes — and retained the same counsel as Servicios de Salud. For nearly two years the defendants litigated as if "Hospital Episcopal San Lucas Inc." was the party that entered into the contract with PRMEG, and in fact, admitted as much in responsive pleadings. Now, years after the complaint was filed, defendants argue that the served "Hospital Episcopal San Lucas Inc." is not the party to the PS Contract, and instead is a corporation that has not operated since 2008. In response, the

plaintiff's appear to admit that Saint Lukes is not a named party
to the dispute.

Frequently, "[t]he simplest way to decide a case is often the
best" Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248
(1st Cir. 2013) (quoting Chambers v. Bowersox, 157 F.3d 560, 564
n.4 (8th Cir. 1998) (R. Arnold, J.)).  The Court will not dismiss
an action for failure to join a party that has already been joined.
See Jercich v. County of Merced, 1:06-CV-00232-OWW-DLB, 2006 U.S.
Dist. LEXIS 94030, at *26 (E.D.Cal. Dec. 19, 2006) ("As Ayers is
already a party to this action, Rule 19 does not apply to him.")
This rule is particularly pertinent here, where a motion for
summary judgment has already been filed.  (Docket No. 177.)  A
finding that Saint Lukes is a non-joined indispensable party would
necessitate PRMEG to file a third amended complaint, making
defendant's motion for summary judgement moot and spurring
repeated litigation.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion is **DENIED
WITHOUT PREJUDICE**.  The parties are ORDERED to present the Court
memoranda showing why Saint Lukes is not a joined party **no later
than July 14, 2017**.  No extensions will be granted.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 5, 2017.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE